THOMAS C. DOREMUS, JAMES SUYDAM AND JOHN M. NIXON, SURVIVORS OF CORNELIUS R. SUYDAM, *vs.* JAMES M. MCCORMICK.—*December* 1848.

In an action of debt, against a surviving partner, he pleaded a release. The plaintiff rejoined, that it was obtained by misrepresentation and fraud; that the defendant had represented, the partnership was not able to pay, and could not pay, more than about one-fourth of the debt, when, in fact, it was possessed of sufficient property to pay the whole claim, which the defendant well knew, and that in consequence of the said false and fraudulent representation, the plaintiffs executed the release. The plaintiffs gave general evidence of the condition of the partnership affairs, as represented by the defendant to them; the alleged insolvency of the firm, prior to and at the time of the release, and that the firm continued until death of the other partner. The deceased partner, on being informed, prior to his death, of the settlement with the plaintiffs at one-third of their claim, said, that the firm had, at the time of said alleged settlement, funds sufficient to have paid the plaintiffs in full, in the hands of the defendant, as liquidating partner. HELD, that this declaration of the deceased partner, was evidence to affect the defendant as his survivor.

An innocent partner is constructively responsible for the fraudulent acts of his co-partner, when those acts are committed within the range and scope of partnership transactions.

The representation of any fact, or a misrepresentation of any fact, made in any partnership transaction by one partner, is considered as the act of all the partners, and will bind the firm.

The fraud alleged to have been practised in this case, as the means of procuring the release, was connected with a partnership transaction, and employed by one partner, as a false pretence, to obtain a paper, in the execution of which the firm was interested.

The composition of a debt, either as a creditor or as a debtor, is one of the acknowledged and frequently exercised powers of a partner. Is within the scope of his authority.

APPEAL from *Baltimore* county court.

This was an action of *debt,* brought by the appellants against the appellee, as surviving partner of *James M. Lightner,* for $4012.01¼, in the debet and detinet. The plaintiffs counted on a judgment obtained in the State of *Alabama,* on the 27th July 1840, against the appellee and his deceased partner, for $3995.95 damages, with interest, and $16.6¼ costs. The defendant pleaded *nil debet,* and *actio non accrevit infra tres annos.* The plaintiff demurred to those pleas, and they were

7    v.7

withdrawn by the defendant, and he then pleaded the following: release, of which oyer was craved and granted :

"Know all men by these presents, that we, *Thomas C. Doremus, Cornelius R. Suydam* and *John M. Nixon*, composing the firm of *Doremus, Suydam and Nixon*, all of the city and State of *New York*, for and in consideration of the sum of one thousand dollars, paid us by *James M. McCormick*, of the city of *Washington*, the receipt whereof we do hereby acknowledge, have released, acquitted and discharged, and by these presents do acquit, release and discharge, the said *James M. McCormick* and *James N. Lightner*, of and from all debts and demands whatsoever, due or owing to us, jointly and severally, from said *McCormick* and *Lightner*, jointly and severally, arising from notes, bonds, bills, judgments, or in any other way whatsoever, at any time heretofore, to this date; and we do further, jointly and severally, covenant and agree, to release all claim and lien on any land of said *McCormick*, in the State of *Alabama*, in consequence of any judgment, execution or other process thereon, and bind ourselves, to execute any deed or writing that may be necessary to release such land from any such claim, or lien, or process; and in case the said land shall have been sold under any such judgment, execution or process, then to refund and pay the said *McCormick* whatever sum or sums of money the same may have been sold for. Witness our hands and seals, this 2nd day of April, A. D., 1841.

| *April, A. D.,* 1841. | THOS. C. DOREMUS, | (Seal.) |
| Signed, &c. | CHAS. R. SUYDAM, | (Seal.) |
| | JOHN M. NIXON, | (Seal.)" |

To this plea the plaintiffs replied, that the said supposed writing of release in the said plea mentioned, was obtained from the said *Thomas C. Doremus, Cornelius R. Suydam* and *John M. Nixon*, by the said defendant, by fraud, covin, and misrepresentation; that is to say, by the said defendant, falsely and fraudulently representing to the said *Thomas C. Doremus, Cornelius R. Suydam* and *John M. Nixon*, that the said defendant and the said *James N. Lightner*, were not able to pay, and could not pay to the said plaintiffs, more than the said sum of one thousand dollars of the said debt of the said

defendant, and the said *Lightner* to the said plaintiffs: when the said defendant and the said *Lightner* were possessed of property sufficient to pay, and were able to pay, and could well have paid to the said plaintiffs the whole of their said debt, which the said defendant well knew; in confidence of which said false and fraudulent representation, the said *Thomas C. Doremus, Cornelius R. Suydam* and *J. M. N.*, did execute the said writing, to wit, at the county aforesaid, wherefore the said plaintiffs say, that writing was and is void in law, and this they are ready to verify.

The defendant rejoined, that the said writing of release, so sealed as aforesaid, and in the said replication mentioned, was obtained by the said defendant fairly and honestly, and not by fraud, covin, or misrepresentation, in manner and form as the said plaintiffs have in their said replication above alleged, and this the said defendant prays may be enquired of by the country, &c.

1st Bill of Exceptions. The plaintiffs to sustain the issue on their part, produced in evidence, upon the trial of this cause, a duly authenticated copy of the record of judgment, rendered in the county court of *Coosa* county, in the State of *Alabama*, on the 27th day of July 1840, in favor of the said plaintiffs, and against the said defendant and his deceased partner, (in his lifetime,) in manner and form, and to the tenor and effect set forth in the declaration; and then read to the jury the release pleaded by the defendant, and produced by him on *oyer* thereof prayed.

The plaintiffs then produced in evidence a letter from the defendant to the plaintiffs, viz:

"WASHINGTON CITY, *May* 28*th,* 1840.

MESSRS. DOREMUS, SUYDAM & NIXON,

*Gentlemen:*—You are aware, ere this, of not only *James M. McCormick* being here, but also *J. N. Lightner*, and that we have made propositions to our creditors, and are settling off with them. We address you to say, that if you are disposed to settle on any kind of fair terms, that we will give you an equal chance with the balance of our creditors. You can judge for yourselves, whether it is better for you to compromise

and get something that you can realise on, or to be continuing
a suit at a large expense, and then you can obtain nothing
more, nor perhaps one-half as much as now we are willing to
allow you.   If you had have known your own interest when
your agent first called on us, you would have acceded to our
proposition and jumped at it; and should you ever do business
with the south, you will make that discovery; you have some
good debtors south; you can inform your agent here if you
are disposed to make a compromise, and I can be found in the
city.          Yours, &c.,      LIGHTNER & McCORMICK,
                                 Per *J. M. McCormick*."

The plaintiffs then proved by *Z. Collins Lee*, that in the
spring of 1840, he was employed by the plaintiffs, as their
attorney, to collect from the defendant and his then partner,
*Lightner*, the debt due by them to the plaintiffs, for which
the judgment declared on in this case, was afterwards obtained
in *Alabama*.   The witness brought suit accordingly, in *Wash-
ington*, to the March term of 1840, and the defendant, *McCor-
mick*, was arrested under the writ.   The witness had several
conversations and interviews with the said defendant, about
that time, in relation to the said claim and the settlement
thereof; said defendant uniformly represented to the witness
on those occasions, that the affairs of the firm of *L. and McC.*
were very bad.   He spoke something of a house in *Wetumpka,
Alabama*, which he said was worth about three thousand
dollars, but said, that the firm could do little or nothing to-
wards the payment of its debts.   Witness offered to take fifty
cents on the dollar in the notes of the firm, with the endorse-
ment of the defendant's father.   This the defendant refused,
said he would give no notes and no security, and talked,
witness thinks, of twenty-five cents on the dollar, as the utmost
possible payment that the firm of *L. and McC.* could make.
The witness thinks this, because he finds, that in a letter of
his own to his clients, he enquires of them in regard to a settle-
ment at that rate.   The defendant further said, that the bank-
rupt act would soon pass, and would relieve them altogether.
In consequence of these conversations, and of a letter from said
defendant to the witness, dated June 2nd, 1840, the witness

further proved, that on June 7th, 1840, he wrote a letter to the plaintiffs, containing a copy of the said last mentioned letter of the defendant. The witness further proved, that after diligent search for the defendant's letter of June 2nd, 1840, so last mentioned, he had not been able to find the original, but that his own letter of June 7th, 1840, contained a true copy thereof. The said letter of the witness, and said copy of the defendant's letter, were then read in evidence by the plaintiffs.

BALTIMORE, *7th June*, 1840.

*Gentlemen:*—I received last evening a letter from *L.* and *McC.*, to the following effect:

"WASHINGTON, *4th June.*

To Z. C. LEE, ESQ.,

*Sir:*—I received yours of the 3rd to-day, and, in reply, am sorry to inform you, that I never have once surmised such a thing as to give *Messrs. D., S.* and *N.*, our notes, with security, either in the south, east, north or west, and as to father, he will lose about $2000 by me already, and rather than he should lose one dollar more, I would go to jail and stay for twelve months, if necessary; but I have as good counsel as there is in this city, and he informs me, that, (even if the bankrupt law is not acted upon this session,) there will be no occasion to go for one hour; *Messrs. D., S.* and *N.*, have hunted me like a dog, and sued me here in *Alabama*, and even attempted to hold a poor innocent man, (because, unhappily for him, his name was *McCormick*,) to bail in their own State, although he had a different surname; and, even after all this, require *more* than any other creditor has required of us. I settled a claim of $2000 with a real gentleman a few days ago for $794, and then did not endorse a note, nor did he know either of the drawers of the same. *D., S.* and *N.* never once thought that I would appear here, but that the old man would have to pay it; but instead of one, both of us are here, and ready to stand the test, if forced to it. Although it is somewhat unpleasant, if it could be avoided, and for that reason I thought proper, without consulting *Lightner*, to offer them such a settlement as we can honestly afford them. We have settled a large amount of our debts since this suit, and if it had

not have been for it, would have settled all, and we have not endorsed or given the first new note, nor do we ever intend to do so, as neither of us are worth anything, as we lost, by different ways, a great deal more than half of our capital in business in *Wetumpka*, it would always be hanging on us. Now, to come to the matter respecting their claim, we have not got any kind of funds, (except the *Trading Co's*,) sufficient to pay them twenty-five cents in the dollar, in cash or paper. We contemplated securing them, by having some very valuable property assigned to them, which has cost us $2700, and upon which there is still due $900, making it stand at $3600, and which now, although rents have fallen at least fifty per cent., still rents for $400 per annum. This property is so secured, that it cannot be got at by any legal proceedings, and would now command about $2500 to $3000, on a moderate credit, and the property to be liable for the purchase money. If they would release us and pay costs of suits, we would have this fixed for them. This is the best proposition we can offer, and more than we have given any of the rest of our creditors, and the only one we will do. They made at least twenty-five or thirty per cent. on their goods; I know from the same kind of goods bought at the same time and brought to *Wetumpka*, and I said to *Lightner* at the time, that they did not expect to be paid, and knew it when the notes were given at six, seven and eight months, when all goods bought for the south, are always purchased at twelve months; but, on the maturity of two of the notes, we proposed paying them one-half cash, and extending the balance three, four and five months, and while their agent, who was there, (had not sense enough to jump at it,) was pretending to reflect on it, the *Trading Co.* run off, while I, in endeavoring to secure $10,000, was nabbed like a runaway, when I went boldly through their own city and stopped there.

You have therefore the only proposition that is in my power I assure you, and a good one, if you accede to it, on your part; this is not as yet been made to any one of our creditors, and would answer your clients, I have no doubt. If you think you can accede to it, you can bring our notes down, and I will

arrange it with you; if this does not suit you, please answer, as we can arrange other claims with it. This is a fair statement of facts, and I hope it may be satisfactory to you, and if I have expressed myself too warmly, I assure you it is not intended with any disrespect to you.

Very respectfully, &c.,

LIGHTNER & McCORMICK,

Pr. *J. M. McCormick*."

"'This, gentlemen, you will perceive the whole case as made out by the debtors. The property referred to by them, is not located or described, I presume it is in the south. I shall await to hear by return mail your opinion and instructions, and will then repair to *Washington*, and make the best settlement in my power; early and final action is most desirable, and some compromise ought to be made, for I foresee that they will take the benefit, if pressed; my time is much occupied, and engagements in court, now settling here, engross me, of course I shall relinquish all, and expect from you additional compensation, when the matter is closed by me; they are so cornered by my plans at *Washington*, that I will make the best possible settlement for you, and therefore must give it immediate personal attention.

If twenty-five per cent. cash is offered on the debt and interest, will you take it in preference to the property? In your letter please inform me, whether I can hold a party to bail now in your State on a note or bond? (In haste.)

I am yours with esteem, Z. COLLINS LEE.

P. S. I wish *Pryor* had returned me the original notes; I have copies, however, that will answer. Z. C. L.''

The witness further proved, that afterwards, in the month of September or October, 1840, *Doremus*, one of the plaintiffs, passed through *Baltimore* on his way to *Washington*, for the purpose of making some settlement with the defendant. The witness then communicated to said *Doremus*, the representations which the defendant had verbally made, in regard to the ability of *L.* and *McC.* to pay their debts, and renewed to said *D.* the advice, to take twenty-five cents on the dollar, which was contained in his letter of June 7th. Sometime afterwards,

the release, which the defendant has pleaded, was executed, and the witness dismissed the suit in *Washington.*

The plaintiffs then read in evidence a letter of the defendant to the plaintiffs, dated February 27th, 1841.

"WASHINGTON, *Feb'y 27th*, 1841.

MESSRS. DOREMUS, SUYDAM & NIXON, *New York,*

*Gentlemen:*—I have at length made an arrangement, at a sacrifice, to settle your claim, if you are disposed to accede to the terms that you agreed to when here, to take one thousand dollars, and allow me the benefit of the land, if sold, under your judgment against *L.* and *McC.*, in *Alabama.* If you think proper to accept of it, while I have it in my power of doing it, you will please either come on, (or send, or authorise some one, by power of attorney, to give the requisite release of all claims against said firm,) and I will pay over to you the money immediately. The land I can use to more advantage, in my settling the other debts of the firm, than I supposed when I offered it to you. Or, if you would rather release me and hold on to *Lightner*, I will give you six hundred dollars; but the land is mine, and you would have to allow me it, as before mentioned. If you would come on immediately, as there are a great many coming, you might see old *Tip* inaugurated. You will please let me know, if you do not think proper to come on, I cannot do any better I assure you, and have been greatly bothered to raise the other $500, as I told you that I only had $500, *Alabama* note. You can do as you think fit in the matter, you have your own proposition now offered to you, and all that I can do.

Very respectfully yours,     J. McCORMICK,

In liquidation of *Lightner & McC.*"

Also a letter from the same to the same, dated March 31st, 1841:

"WASHINGTON CITY, 31*st March,* 1841.

*Gentlemen:*—Annexed, you have the bill of costs in suit against us, paid by me, and have to inform you, that although I have suffered largely by *Lightner*, still he has me bound up in such a manner, that I could not agree to let you hold him responsible, and pay you the amount you ask, as he is as much

interested in the amount to be paid nearly as myself, and I assure you, that it would be of no advantage to you, as there are judgments against him for ten or fifteen thousand dollars, besides large claims not yet sued on, and which are, some of them, confidential debts, and, moreover, his health is such, that I doubt if he ever recovers it, and if he does, it will be a long time; he holds no property that I know of, and his father is an insolvent debtor; so you see that prospects are not flattering. You have also enclosed the release, which I hope that you will agree to and acknowledge before the proper authorities. I have used every exertion to raise this sum for you, and I am sorry that it has incurred the great rate of discount, now between the *Alabama* funds and *Virginia* here, as I have not a cent left, and actually have to beg a friend, noways connected in family, for a portion of it, and how I shall be able to pay it do not know. The bill of costs annexed includes all, clerks, attorneys and marshal. The release is plain and fair, I think, and hope that you will acknowledge it before a notary public, or some competent officer, and enclose immediately, together with an order to *Mr. Brent*, the clerk here, for to strike off the suit from the docket, and *Mr. Riggs* shall have a check for you for the $1000, upon the proper acknowledgment and presentation of the release.

I am very respectfully yours,

Jas. M. McCormick."

The plaintiffs then further proved by *Mrs. Caroline Asprill*, that she is the sister of *Lightner*, the deceased partner of the defendant, and that she went to *Wetumpka*, (where the said parties carried on their business, under the firm of *L. and McC.*,) on the 31st day of March 1838, and resided there until July 7th, 1838, during which time both of the said partners boarded with her. At the end of that period, she returned to *Baltimore*. Her brother, the said *L.*, came to *B.* in the fall of 1838, returned to *Alabama*, and, on the 27th of April 1840, came back to *B.* very ill, to the witness's house, whence, after a short time, he went to *Cecil* county, and returned to the May convention in *Baltimore*. He then lay sick for a considerable time, at the house of the witness, and as she was obliged to give

him constant attention, he lay principally in her own room. *Sometime in May or June,* 1840, *McCormick, the defendant, came to the house of the witness to see her brother, his partner, and the witness proved, that she was present at a conversation between them, in regard to their business. Lightner asked the defendant how he was getting on with his settlements. The defendant produced a number of papers, and they talked over the business. The defendant said, that he had funds in hand to the amount of* $8000, *and that if they could settle, as he expected, with their Baltimore and New York creditors, and could arrange with Doremus, Suydam and Nixon, (the plaintiffs,) at sixty cents on the dollar, they would have* $4000 *left for a plank in Texas.* The brother of the witness replied, that he should be in his grave before that would happen. The witness further proved, that she was intimate with the defendant, and that both the defendant and her brother were in the habit of speaking freely, to her and in her presence, of all their business. The said defendant several times afterwards, between the date of the last mentioned conversation, and that of the release aforementioned, came to the house of the witness and spent the day; on one of these occasions, he said to his partner, in the presence and hearing of the witness, that he had settled satisfactorily with the *Baltimore* and *N. Jersey* creditors of *L.* and *McC.,* and that *D., S.* and *N.,* (the plaintiffs,) were the only remaining creditors.

The witness further proved, that in the spring of 1841, she saw and read a letter from the said defendant to his partner, her said brother, in which said defendant wrote, that he had settled with the plaintiffs at thirty-three and one-third cents in the dollar. For this letter, the plaintiffs proved, that diligent search had been made among the papers of the deceased partner, *L.,* but that the same could not be found.

The plaintiffs further proved, by the said *Caroline Asprill,* that in April 1841, she had a conversation with the defendant, in which he informed her, that he had settled with the plaintiffs at thirty-three and one-third cents in the dollar. The witness further proved, that her said brother, *L.,* died on June 29th, 1841, and that the partnership of *L. and McC. continued until*

*his death.* The last conversation between the defendant and *L.*, was in February or March, 1841, the witness thinks, and that was the last time that the defendant ever saw *Lightner*.

The plaintiffs then offered to prove by the said witness further, that her said brother, upon being informed of the said alleged settlement by the defendant with the plaintiffs, at thirty-three and one-third cents on the dollar, which information he received, as aforesaid, in the spring of 1841, and during the continuance of the partnership, said to the witness, that the said firm of *L. and McC.* had, at the time of said alleged settlement, funds sufficient to have paid the debt due to the plaintiffs in full; and further stated, that said funds were, at the time of said settlement, in the hands of the said *McC.*, as liquidating partner, the said *McC.* was not present at the time when said *L.* made said declarations. But the said defendant objected to the admissibility of the declarations of said *Lightner*, and the court, (PURVIANCE and LE GRAND, A. J.,) being divided in opinion, refused to admit the said declarations, and did not admit the same to go to the jury.

To which refusal and the non-admission of said evidence, the plaintiffs excepted.

The plaintiffs below appealed to this court.

The cause was argued before SPENCE, MARTIN and FRICK, J.

By S. T, WALLIS for the appellants, and
By WM. SCHLEY for the appellee.

MARTIN, J., delivered the opinion of this court.

In this case, an action of debt was instituted upon a judgment, rendered in favor of the appellants against the appellee, and *James N. Lightner*, in one of the courts in the State of *Alabama*. The suit was brought against the appellee, as the surviving partner of the firm of *Lightner and J. McCormick*, and the judgment on which it was based, bears date on the 27th of July 1840, and was for the sum of four thousand and twelve dollars, and one-fourth cents.

The defendant pleaded in bar a release. This release was dated on the 2nd of April 1841, and recites: "That in consideration of one thousand dollars, paid to the appellants by *James M. McCormick,* they acquit, release, and discharge the said *James M. McCormick* and *James N. Lightner,* of and from all debts and demands whatsoever, due or owing to the plaintiffs, jointly or severally, from said *McCormick* and *Lightner,* jointly and severally, arising from notes, bonds, bills, judgments, or in any way whatsoever, at any time prior to the date of the said release; and they further, jointly and severally, covenanted and agreed, "to release all claim and lien on any land of the said *McCormick,* in the State of *Alabama,* in consequence of any judgment, execution, or other process thereon;" and they bound themselves "to execute any deed or writing, that might be necessary to release such land from such claim, lien or process, and in case it should have been sold under any such judgment, execution or process, to refund and pay the said *McCormick,* whatever sum the same might have been sold for."

The plaintiffs craved oyer of this release, and by their replication alleged, that it was obtained from them by the defendant, by fraud, covin, and misrepresentation, that is to say, by the said defendant, falsely and fraudulently representing to the plaintiffs, that the said defendant and the said *Lightner* were not able to pay, and could not pay, more than one thousand dollars of the said debt, when the said defendant and the said *Lightner* were possessed of property sufficient to pay, and were able to pay, and could well have paid, the whole of the said debt, which the defendant well knew; "in consequence of which said false and fraudulent representation, the plaintiffs did execute the said writing."

The defendant, by his rejoinder, traversed the fraud, and tendered an issue thereon to the country, in which the plaintiffs joined.

At the trial of the cause, the judgment and release were offered in evidence; the plaintiffs also introduced several letters signed by *McCormick,* in the name of the firm, anterior to the settlement and release; also certain statements made by the

defendant to the counsel of the plaintiffs; and then proved substantially by *Mrs. Asprill,* (the sister of *James N. Lightner,*) that *Lightner* died at her house, in *Baltimore,* on the 29th of June 1841, and that the partnership of *Lightner and McCormick* continued up to the period of his death. They further proved by this witness, that the defendant had several interviews with *Lightner,* during his sickness at her house. That on one occasion, *McCormick* produced a number of papers, and that *McCormick* and *Lightner* talked over their business, in the presence of the witness, who was intimate with both of them, and familiar with their affairs. And that in this conversation, *McCormick* said, "that he had funds to the amount of $8000 in hand, and if they could settle with their *Baltimore* and *New Jersey* creditors, as he expected, and could arrange with *Doremus, Suydam* and *Nixon,* at sixty cents in the dollar, they would have $4000 left for a plank in *Texas.*" The same witness further stated, that *McCormick* afterwards told her brother, in her presence, that he had settled with the *Baltimore* and *New Jersey* creditors satisfactorily, and that the appellants were the only remaining creditors. And in the spring of 1841, *McCormick* wrote to *Lightner,* and likewise informed the witness, that he had settled with the appellants at thirty-three and one-third cents in the dollar.

The appellants then offered to prove by the witness, "that her brother, on being informed of the said settlement by the defendant with the plaintiffs, at thirty-three and one-third cents in the dollar, which information he received in the spring of 1841, and during the continuance of the partnership, said to the witness, that the said firm of *Lightner and McCormick,* had, at the time of said alleged settlement, funds sufficient to have paid the debt due to the plaintiffs in full; and further stated, that said funds were, at the time of said settlement, in the hands of *McCormick,* as liquidating partner."

The appellee was not present when these declarations were made by *Lightner.*

The appellee objected to the admissibility of the declarations thus offered: the declarations were rejected by a divided court, and the sole question presented for our consideration by this

exception, is, whether the declarations of *Lightner* were admissible and competent evidence for the plaintiffs, upon the issue joined between the parties in this cause?

It is conceded in this case, that the declarations in question were made by *Lightner*, during the continuance of the partnership between *McCormick* and himself; and it is apparent from the whole testimony in the cause, that the appellee, in procuring this release, acted for and represented the firm. The proof furnished by the letters of the appellee, is conclusive upon this subject. They prove, that the debt originally contracted was a partnership debt, for which *Lightner* and *McCormick* were responsible *in solido*, and that the *Alabama* judgment was rendered against them as partners. It will be seen, by an examination of the evidence exhibited in the exception, that the appellee, in his correspondence with the appellants, and in his negotiations with *Mr. Lee*, with respect to the settlement of this claim, invariably speaks of this debt as a partnership debt, and complains of the inability of the *firm* to discharge it. In his interviews with *Lightner*, pending these negotiations, *McCormick* referred to this claim as a matter in which *Lightner* was interested, informing him, "that if he could arrange with the appellants, at sixty cents in the dollar, *they* would have $4000 for *Texas;* the release, by its terms, professes expressly to discharge, not *McCormick* alone, but *McCormick* and *Lightner*, from all judgments, &c., existing at any period prior to its date; and it is perfectly clear, that if the predicament of these parties had been altered, and the suit had been instituted upon this judgment, against *Lightner*, as the surviving partner, he could have interposed this release, assuming it to be valid as an absolute bar to the action. The release is to be regarded, as a contract between the appellants and the firm of *Lightner and McCormick*, obtained through the instrumentality of *McCormick*, as the active and liquidating partner. The action was properly brought against *McCormick*, as the surviving partner of the firm of *Lightner and McCormick*, and, as a general principle, the admissions of *Lightner* touching this release, would be considered as the admissions of the defendant, and therefore admissible evidence against him.

An approved writer upon this subject, says:

"As soon as evidence of the partnership is established, the acts, admissions, and declarations of one partner, in matters relating to the affairs of the partnership, will be evidence against the firm. In this respect, the partners are to be considered as one person, and therefore the rule will hold good, although the partner making the admission is not a party to the record." *Coll'r on Part.*, *sec.* 779.

In the case of *Boyce against Watson*, 3 *J. J. Mar.*, 500, the declarations of a partner, upon whom *the capias* had not been served, were admitted as evidence against his co-partners, and the court correctly held:

"That the confessions of a partner, are not admissible as evidence against his co-partners, on account of having been served with process, but of their *unity* as partners." And in *Reimsdyk vs. Kane*, 1 *Gal.*, 635, *Mr. Justice Story* said:

"I admit, the answer of one defendant cannot in general be read against another defendant; otherwise such co-defendant would be deprived of the opportunity of cross-examination. But this rule is liable to exceptions, and, therefore, where the confessions of any party would be good evidence against another, his answer, *a fortiori*, may be read against the latter. In cases of partnership, the confession of one partner in relation to a partnership concern, is in general admissible on an action against the other. It is not evidence to prove the partnership itself, but that being once admitted, or proved *aliunde*, the confession is let in for all collateral purposes."

By turning to the pleadings in this case, it will be perceived, that the replication charges, that this release was obtained from the plaintiffs, by the fraud and misrepresentation of the appellee. The specification of the fraud is, that the defendant falsely and fraudulently represented to the plaintiffs, that the defendant and *Lightner* were not able to pay more than one thousand dollars of the debt, when they possessed property sufficient to pay the whole of the debt, and that this fact was known to the defendant.

This fraud was traversed by the defendant's rejoinder, and the plaintiffs, as one of the items in their proof, conducing to

show that the imputed fraud was perpetrated by the defendant, offered in evidence the declarations of *Lightner*, for the purpose of establishing before the jury, not only that the firm of *Lightner and McCormick* was, at the time of the settlement, abundantly able to pay the entire debt, but that this fact was known to the defendant, as he had ample funds in his hands, as the liquidating partner of the house.

There is no evidence in the case, indicating that *Lightner* was privy to the fraudulent misrepresentations imputed to the defendant; and the counsel for the appellee has contended, that this fraud, if perpetrated, is to be considered as the individual act of the defendant, not within the scope and limits of his authority as one of the partners, and for which, therefore, the firm was not responsible. It was insisted, that fraud is, from its nature, necessarily a personal act, and that the partnership contract is not to be interpreted, as communicating to one of the members of the firm the power of implicating his associates, by his fraudulent misrepresentations: That the fraud complained of, is to be treated as the fraud of the defendant in his individual capacity, and not as the fraud of the firm of which he was a member.

This point was pressed upon the court with great force and power by the counsel, and assuming his proposition to be correct, it would follow as a corollary, that the declarations of *Lightner*, with respect to this alleged fraudulent transaction, would be considered as the declarations of a mere stranger, and as such clearly inadmissible.

But an insuperable answer to the proposition of the counsel for the appellee, is, that according to the established and acknowledged doctrine of the common law, an innocent partner is constructively responsible for the fraudulent acts of his co-partner, when those acts are committed within the range and scope of the partnership transactions. The representation of any fact, or a *misrepresentation* of any fact, made in any partnership transaction, by one partner, is considered, *Judge Story* says, as the representation, or misrepresentation of all the partners, and will bind the firm. *Story on Part., sec.* 107.

Again the learned commentator says:

Doremus, *et al., vs.* McCormick.—1848.

"The principle, (alluding to the doctrine, that the representations and admissions of one partner, within the limits of the partnership, are considered as the representations and admissions of all the partners,) extends further, so as to bind the firm for the frauds committed by one partner, in the course of the transactions and business of the partnership, even when the other partners have not the slightest connection with, or knowledge of, or participation in the fraud;" for he remarks, it has been justly observed, "that partners, by forming this association, declare themselves to the world, as satisfied with the good faith and integrity of each other, and impliedly undertake to be responsible, for what they shall respectively do within the scope of the partnership concerns." *Story on Part.*, sec. 108.

This principle, thus announced by *Mr. Justice Story*, was directly affirmed by *Abbott*, as the chief justice of the *King's Bench*, in the case of *Rapp against Latham and Parry*, 2 *Barn. & Ald.*, 795; and a similar doctrine was enunciated by the court, in the cases of *Stone vs. Marsh*, 6 *B. & Cres.*, 551, and in *Boardman against Gore*, 15 *Mass.*, 335.

What then was the character of the fraud alleged to have been practiced by the appellee, as the means of procuring this release? Was it not connected with a partnership transaction, and employed by him, as a false pretence, to obtain a paper, in the execution of which the *firm* was interested?

It is impossible, that any other than an affirmative answer can be returned to these questions.

The composition of a debt, either as a creditor, or as a debtor, is one of the acknowledged and frequently exercised powers of a partner. It is strictly within the scope of his authority. In the composition of this debt, the appellee presented himself to the appellants, as the representative of the firm of *Lightner and McCormick*, seeking to adjust and settle a partnership debt. By compounding this large claim for the sum of one thousand dollars, the partnership was greatly benefitted. The appellants dealt with the appellee, not as an individual, but in his capacity of partner, and were entitled to consider his representations, with respect to the insolvency of the firm, as the representations of both of the partners.

9    v.7

Upon this ground, we think, the declarations of *Lightner*, as offered by the appellants, were admissible in evidence, and that the court below erred in rejecting them.

JUDGMENT REVERSED AND PROCEDENDO AWARDED: