*B. H. SUMNER v. THE CHARLOTTE, COLUMBIA & AUGUSTA RAIL-ROAD COMPANY.

*Agent and Principal—Depot Agent—Rail-Road—Seizure by Confederate Government—Common Carrier—Bailee.*

1. In an action for damages against a rail-road company, where it appeared that the plaintiff had employed one C, who was a depot agent of the defendant, to purchase cotton for him and to hold and ship it under his directions ; *It was held* that C, in so dealing in cotton for the plaintiff, acted solely as the *plaintiff's* agent and there was no liability on the defendant from any loss resulting from the failure of C to perform his duty as such agent. The law does not favor double agencies.

2. In such case, where it appeared that the plaintiff instructed C not to ship until he had purchased a certain number of bales, and before C had acquired the requisite number, the rail-road was taken by irresistible force into the complete control of the Confederate Government, C thereafter acquiring the requisite number ; *It was held,* that the Court below erred in submitting to the jury an issue as to whether or not it was impossible for the defendant company to ship the cotton.

3. In such case the defendant was not liable as common carrier, but as bailee, if at all. And the fact that before the requisite number of bales was obtained by C, the railroad was seized by the Confederate Government, is at least evidence to be considered, that the defendant never received the cotton at all, either as bailee or common carrier.

CIVIL ACTION, for Damages removed from Mecklenburg and tried at Fall Term, 1877, of CABARRUS Superior Court, before *Kerr, J.*

This action was brought to recover damages for the loss of eighty-five bales of cotton which the plaintiff alleged he had delivered to the defendant company at Ridgeway,

*Bynum, J. having been of counsel in the Court below did not sit on the hearing of this case.

18

South Carolina, to be transported to Charlotte, North Caro-
lina, and that the defendant negligently failed to notify the
consignee of its arrival in Charlotte, and negligently lost
the same or converted it to defendant's own use. It appear-
ed that said cotton was bought for plaintiff by A. K. Craige,
the depot-agent of the defendant at Ridgeway; the plain-
tiff having placed in Crage's hands, in 1863, a considerable
sum of money, with instructions to buy the cotton, also
directing him when, and to whom, to ship it. It further
appeared that the defendant's Road, at the time of the al-
leged delivery of said cotton to the agent at Ridgeway,
was in the possession of the authorities of the Confederate
Government, and used for the transportation of munitions of
war and supplies for the Confederate Army, and that by
the irresistible force of said Government in the manage-
ment and control of the same, it was impossible for the of-
ficers of the Road to transport the property of individual
citizens. There was much evidence adduced upon the trial
in the Court below, but that portion which is necessary to
an understanding of the case is set out by Mr. Justice
READE in delivering the opinion of this Court. Under the
instructions of His Honor, the jury rendered a verdict for
the plaintiff. Judgment. Appeal by defendant.

*Messrs. W. J. Montgomery* and *W. H. Bailey*, for plaintiff.
*Messrs. Wilson & Son*, and *R. Barringer*, for defendant.

READE, J. The theory of the plaintiff is that in Novem-
ber, 1864, he delivered to the defendant at its depot, Ridge
way, in South Carolina, 85 bales of cotton to be delivered
to him in Charlotte, North Carolina, and that the same was
never delivered, and that it is a total loss. In order to sup-
port that theory, the plaintiff himself testified that one
Craige was the defendant's depot agent at Ridgeway; that
the plaintiff in October, 1863, employed Craige as his agent

and furnished him with money to buy cotton for him, and that Craige agreed "to ship any cotton so purchased, whenever directed;" that in March, 1864, he was at Ridgeway and saw 10 bales on the platform, marked to him, and again in June 1864, he saw 48 bales marked to him, and that he then instructed Craige that as soon as 85 bales should be secured, he should ship. He proves by another witness that in July, or August, there were 48 bales; and by the same witness, that in December, 1864, Craige told him that he had 85 bales, and had not shipped for want of cars. And another witness testifies that he saw the cotton still at Ridgeway, on the 10th of February, 1865.

Now taking this testimony to be true, does it support the plaintiff's theory? Upon the supposition that Craige was the defendant's depot agent, what was his business? Manifestly to do what the defendant was bound to do. What then was the defendant bound to do? Its ordinary duty was to receive freight and transport it within a reasonable time, as a common carrier; and as incident to this, it had the duty of bailee or warehouseman when it was necessary to store goods. This duty the defendant had to perform through agents,—in this instance, through Craige. It is to be assumed from the mere fact that Craige was the depot agent, that he had the power to perform this duty, and to make contracts in regard thereto, and to bind the defendant in regard to all matters germane to its business. Beyond that, it is not to be assumed that he had any power, and the burden of proving that he had, is upon him who alleges it. In this case there is no evidence that he had any other power than what was incidental to his employment as depot agent; and without pretending to define with any nicety the limits of his power, we may surely say that it did not extend to the buying of cotton for the plaintiff for the space of twelve months, and holding it for that time. All that Craige did therefore in buying the cotton and holding the same under the employment and directions of the plaintiff.

from October, 1863, up to the time when he was directed to ship it in the fall of 1864, he did as the agent of the plaintiff; and the defendant is not liable for any loss that resulted from Craige's failure to perform his duty as the agent of the plaintiff.

Although we do not make this case turn upon it, yet it is in it, and therefore may be remarked upon,—that the law does not favor double-agencies. It is almost impossible to prevent a conflict of duties and of interests. If I make one my agent and he take an interest in the subject matter and act upon it, he cannot bind me, although he act perfectly fair. It is scarcely less objectionable if he take an agency for another who has an interest adverse to mine. Both the Bible and Justice Story say that one cannot serve two masters. Especially is this reprehensible in such matters as are now under consideration. It is the duty of a Rail-road which has a franchise from the public, to accommodate and serve the public fairly and impartially ; and such is the duty of its agents, with the additional duty to serve the Road faithfully. But here the plaintiff employs the defendant's agent to be *his* agent and to do *his* bidding; and although it may not be that any harm did result to the public in this case, yet the temptation to do it, and the ease with which it may be done, make it impolitic to encourage it, to say the least.

But however that may be, the plaintiff himself proved that he instructed Craige not to ship the cotton until he had bought 85 bales, and there is no evidence that he had bought 85 bales until December, 1864, so that the defendant could not have shipped the cotton until December, 1864. And then the defendant alleges in his answer, and the President of the Road testifies that in September, 1864, the irresistible military forces of the Confederate Government took the possessson and the complete control and occupation of the Road, and that it was impossible for the de-

:fendant to ship the cotton; and the defendant asked His Honor to charge the jury that this a was good defence. His Honor refused so to charge, or to submit the question to the jury, declaring that there was "no evidence that the cotton was destroyed by a public enemy, and that no irresistible force would excuse the defendant unless it proceeded from the act of God or the public enemy; and that any destruction by the Confederate Government or its officers, its army or agents, would not relieve the defendant from responsibility."

This doctrine may be true enough as applied to common carriers who are insurers, and are forbidden by public policy to have any other excuse, but it is untrue as applied to bailees or warehousemen. They are not insurers, and are bound only for due care. Craige had been expressly instructed by the plaintiff not to ship the cotton until he bought 85 bales. He had not bought 85 bales up to September, when the Road was taken out of the defendant's control. So that the most that can be said against the defendant is, that at the time the Road was taken from it, it was a bailee and not a common carrier. In failing to make this discrimination, His Honor erred.

The defendant is entitled to have the military occupation of the Road considered in another aspect:—If Craige held and controlled the cotton as the plaintiff's agent up to September 1864, and the defendant lost its Road at that time, it is at least evidence to be considered, that it never received the cotton at all, either as bailee or common carrier. There are other exceptionable matters which may not occur on another trial.

It is clear that the rights and liabilities of the parties were not understood on the trial, and therefore, and for the errors specified, there must be a *venire de novo.*

Error.

PER CURIAM.                                    *Venire de novo.*