## N. C. HALL v. SAMUEL YOUNTS and others

*Partnership—Evidence—Conversion, measure of damages—Judgment—Costs—In Forma Pauperis.*

1. Where members of a firm are sued as individuals for the conversion of plaintiff's property, evidence of transactions with the firm in respect to it, and of the membership thereof, is competent to affect them. Each and every member is responsible for the tortious acts committed by an agent of the firm in matters connected with the business, and a partner, acting in their name and with their knowledge, is regarded as their agent.

2. Evidence of the declarations of a partner, upon whom there was no service of process as a party to the suit, is competent against his copartners. Nor does the mistake made by one of the firm in drafting what purported to be an attachment bond in this case, affect the competency of the bond as evidence for the purpose for which it was offered.

3. A deed conveying a " black horse " to defendant mortgagee, is evidence upon the question of title, though the plaintiff's complaint describes the horse as being of a different color. The question of identity of the property is one of fact for the jury.

4. Where property is seized, the burden of proof rests upon him who makes the seizure, to show proper legal process; and the court will presume that an unauthorized seizure is in violation of the laws of another state.

5. The value of the property at the time of the tortious taking, is the measure of damages in a suit for its conversion. It was therefore error to permit the jury to add to the damages the expenses incurred by the mortgagee in this case in going to South Carolina to recover it.

6. A judgment rendered in favor of a plaintiff, and an affirmative one in favor of a defendant, though written and attested separately, constitute but one judgment.

7. A party suing *in forma pauperis* is not allowed to recover cost of action. (But in this case, as no objection was taken in the court below, and the matter not brought to the attention of the judge, the court will not disturb the judgment for costs.)

CIVIL ACTION tried at Spring Term, 1882, of MECKLENBURG Superior Court, before *Gudger, J.*

This action is for the conversion of a horse of the value of one hundred and twenty-five dollars, and of a saddle, blanket and bridle of the value of ten dollars. It was commenced against Samuel Younts, John Younts, James Wolfe, John Grier and S. L. Hoover, but the summons was not served on Grier.

The complaint, after averring the title of the property to be in the plaintiff, subject to a chattel mortgage given to the defendant, Hoover, upon which there was a balance due of twelve dollars, alleges that the defendant Wolfe and one Powell acting in behalf of the other defendants, except Hoover, wrongfully took the property from the plaintiff's possession, and that it was afterwards converted to their own use by the defendants in whose behalf it was done.

It is also alleged that the defendant, Hoover, being mortgagee as aforesaid, refuses to join the plaintiff in the action, and therefore is made party defendant, though no judgment is asked against him.

The answer of the defendants, Samuel and John Younts

and James Wolfe, consists mainly of a denial cf the allegations of the complaint, and as a further defence alleges that the property was taken from the plaintiff's possession, while in South Carolina, by the said Powell, acting as an officer of that state, to wit, as constable.

The defendant, Hoover, also answered insisting upon his right as mortgagee to recover of his co-defendants for the conversion of the property, and alleging that he had made a demand on them for the property which they refused to deliver.

On the trial issues were submitted to the jury and responded to as follows :

1. Did the defendants, or any of them, wrongfully convert the property mentioned in the complaint, and if so, who ? Answer—Yes : Samuel Younts, John Younts and James Wolfe.

2. What damages, if any, did the plaintiff sustain by reason of such conversion ? Answer—Total damages one hundred and thirty-five dollars with interest from the date of seizure.

3. What damages, if any, did the defendant Hoover sustain by reason of such conversion ? Answer. Hoover as mortgagee $10.55 with interest from maturity of mortgage, and damages by trip to Fort Mills in South Carolina, $5.00.

4. Was the horse described in the complaint the same with the one included in the mortgage ? Answer. Yes.

The court thereupon gave judgment in favor of the plaintiff according to the finding of the jury in his behalf, and also for the costs of the action, and at the same time, though on a separate paper, judgment was rendered in favor of defendant, Hoover, according to the verdict in his behalf, including the sum of $5.00 allowed for his expenses incurred. Defendants appealed.

*Messrs. Jones & Johnston,* for plaintiff.
*Mr. T. M. Pittman,* for defendants.

RUFFIN, J.   Several of the exceptions taken in the cause turn upon matters of fact and have been decided by the jury.

Taken in connection with the verdict, the evidence discloses the following case: The plaintiff is a resident of this state and owned no other property than that mentioned in the complaint.   He was indebted to the firm of S. Younts, Son & Co. in the sum of $65.00 due partly by note and partly by account—the said firm being composed of Samuel Younts, John Younts and James Wolfe, parties defendant, and W. E. Younts and John Grier who are not sued.

In March, 1879, the plaintiff started on a visit to some relatives and passed the store of the defendants, and had some conversation with Sam'l Younts about trading horses, and informed him where he could stop that night at a place in South Carolina.

Plaintiff went to the place, and during the night the defendant Wolfe and one Powell came there and took possession of the horse, bridle, blanket and saddle, and carried them away, so that witness has never recovered them since.

When making the seizure, Wolfe said they had an attachment, but no such paper was then produced, nor was it on the trial—though Powell was a constable in South Carolina.

The defendant Hoover had a mortgage on the property upon which there was a small balance due him.   After the seizure he met with the defendant John Younts, and asked him if he did not know that he had such a mortgage, to which he replied that he did not, and upon being assured that such was the case told said defendant "to go and prove his horse."   Hoover then went to Fort Mills in South Carolina, where the horse was, and demanded it of the person

in possession of it—that person being a stranger to the action.

The defendant Wolfe was present at the store when his co-defendant and the plaintiff had the conversation about trading horses, and the same evening, at the suggestion of Sam'l Younts, he took the notes and accounts, which the firm held on the plaintiff, to South Carolina, and the defendants alleged that he there sold them to one Bacharock, and that the property of the plaintiff was seized at the instance of that person, and not of the defendants; and they introduced the deposition of Bacharock tending to prove that such was the case, and that he gave in exchange for the claims upon the plaintiff, a note on a third party.

It was in evidence, however, that the defendant Wolfe, in the name of the firm, executed what purported to be an attachment bond, and that he procured one Gibson to become surety thereon.

The first three exceptions taken by the defendants being *in pari materia*, we have considered together. The first is to that portion of the plaintiff's testimony, wherein he was permitted to speak of his indebtedness to the firm of S. Younts, Son & Co., the second, to the evidence admitted to show the membership of that firm, and the third, to evidence received as to declarations in regard to the sale of the plaintiff's horse made after its seizure, by John Grier, who, though a member of the firm, was not a party to the action.

The contention of the defendants is, that as the plaintiff has seen fit to sue them as individuals, he should not be permitted to speak of acts and circumstances connected with the firm, and so as to affect them through the firm, and more especially to affect them by the declarations of one who is not a party to the action.

This seems to us to be reversing the common order of things. For, though accustomed to see the point raised as to how far a firm may be answerable for wrongs committed

by its individual members, we have never before heard a doubt expressed as to the responsibility of each and every member, for the tortious acts of the firm, and we cannot conceive it to be well founded. As a general rule, partners, though bound by the contracts, are not bound by the torts of each other, that is to say, torts committed with regard to matters disconnected with the partnership business. Nor are they ever held to be criminally responsible for the acts of each other, even though done in the course of trade, but only those who are actually guilty. But partners like individuals are responsible for torts committed by their agents under express commands, under the maxim *qui facit per alium facit per se*, and a partner acting in the name of the firm, touching its business and with a knowledge of the other members must be regarded as the agent of all. In such cases, says Collyer on Partnership, § 457, the tort is looked upon as the joint and several tort of all the partners, and they may be proceeded against in a body, or one may be sued for the whole of the injury done. And this doctrine of the text-writer is fully supported by the decisions of the courts in *Gray* v. *Cropper*, 1 Allen, 337 ; *Linton* v. *Hurley*, 14 Gray, 191 ; *Locke* v. *Steains*, 1 Met., 560.

And in *Dorehus* v. *McCormick*, 7 Gill., 49, and *Boyce* v. *Watson*, 3 J. J. Marshall, (Ky.,) 498, the very point was made, as here, in regard to the declarations of Grier, and it was held that the declarations of a partner upon whom the *capias* had not been served, were properly admitted as evidence against his co-partners. The declarations of one partner are admissible against his co-partner, not upon the ground of their being parties to the same action, but because of their unity as partners.

4th Exception. That the defendant Hoover was allowed to speak of a demand for the horse, made of a stranger who had him in possession at Fort Mills. We do not stop to consider of the competency of this evidence; for conceding

it to be incompetent, no possible prejudice could result to the defendants from it. In the interview, which it is not denied took place between the witness, Hoover, and the defendant, John Younts, the latter was informed of the former's claim to the property, and had his attention called to the mortgage under which it was derived, and yet put him off by telling him "to go and prove his horse." If any demand were needed to support the action, this in itself, is sufficient.

5th and 8th Exceptions. In the complaint the horse sued for is described as "a dark chestnut colored horse," and in the mortgage to Hoover as "a black horse;" and when it was proposed by the plaintiff to put the mortgage in evidence, the defendants objected because of this discrepancy in the description; and when the judge came to charge the jury, they requested him to say to them that there was no evidence that the horse sued for was the one conveyed in the mortgage.

There can certainly exist no good ground for either of these exceptions. The mortgage was properly receivable in evidence, as any other deed would be, in order to show the source from which the defendant, Hoover, derived his title to the property in dispute; and as both he and the plaintiff testified to its identity, it became a question of fact for the jury. And moreover, in their answer the defendants expressly admit it to be true that the "defendant Hoover has a mortgage upon the horse mentioned in the complaint," and therefore the evidence in regard to it was both needless and harmlesss.

6th Exception. That plaintiff was permitted to put in evidence the attachment bond, given in the name of the firm by the defendant, Wolfe, at the time of the seizure of the property.

This bond on its face purported to be made for the benefit of Bacharock, the alleged assignee of the defendants' claims

upon the plaintiff, and to bind the plaintiff, Hall, to pay him such sum as might be awarded him because of the suing out of an attachment; and the defendants insisted that this mistake in drawing it rendered it inadmissible as evidence. This testimony was offered as tending to disprove the alleged assignment of the claims, or as affecting the *bona fides* of the same, and for either purpose it was clearly competent. We cannot conceive how it could be rendered incompetent by any mistake in drafting it. It was still the act of the defendant, Wolfe, done in the name of the firm.

7th and 9th Exceptions. That the court instructed the jury, that as the defendants had shown no legal process to justify the seizure of the horse, it was illegal in them to have made it, and if the jury should believe that the defendants took the benefit of the sale of the horse, whether in money or in a note on a third party, they would be liable. And that the court refused to give the following instruction : That it must appear that the act complained of was unlawful when committed, and if done in South Carolina, and there being no proof that the law of that state forbids it to be done, then the jury should find for the defendants.

The seizure of property and taking it from the owner's possession is a wrong, unless justified by the process of some court competent to authorize it to be done. Such justification is therefore a matter of defence, and the burden of proof rests upon him who makes the seizure; and in the absence of all evidence going to show the existence of any such process which could justify the seizure of the plaintiff's property, the first instruction was properly given. And there being nothing to show to the contrary, it was safe in the court to presume that a wanton seizure of property, unauthorized by the order of any tribunal, was contrary to the laws of the state of South Carolina.

10th Exception. That the court instructed the jury that in case they found in favor of the defendant, Hoover, they

should allow him compensation for his expenses incurred by reason of the wrongful acts of the defendants.

This exception we think is well founded. In actions of this character, the value of the property at the time of the conversion or tortious taking is the measure of the damages. *Selkirk* v. *Cobb*, 13 Gray, 313; *Hurd* v. *Hubbell*, 26 Conn., 389; *Grier* v. *Powell*, 1 Bush., (Ky), 489.

It is not however necessary that the verdict should be altogether set aside because of this error, as the damages assessed on account of expenses incurred were distinguished by the jury from those rightfully assessed, and the error can therefore be corrected here.

11th Exception. That the court erred in signing two judgments—one in favor of the plaintiff and the other in favor of the defendant, Hoover.

As we understand the exception, it was not intended to raise a question as to the power of the court to give judgment in favor of one defendant against another, but simply to object to the form of the judgment, in that, it was written on separate sheets of paper and attested by two signatures of the judge. But however taken, it is utterly without force. The statute expressly provides that the court may determine the ultimate rights between the two parties on each side as between themselves, and give judgment accordingly. C. C. P. § 248. And however written or attested, it constitutes but one judgment pronounced at one and the same moment of time.

12th Exception. That plaintiff, though suing *in forma pauperis*, was allowed by the judgment to recover the costs of the action.

It is impossible to doubt that this error would have been corrected had His Honor's attention been called to it at the time. But it is manifest that no such objection was urged in the court below, and to allow it now to prevail under a mere general exception taken " to the form and substance

of the judgment," would be alike unfair to the judge and unjust to the other parties, and for this reason we decline to make the correction here.

The judgment of this court therefore is, that except as to the sum of five dollars allowed to the defendant Hoover for his expenses incurred, the judgment of the court below is affirmed, and the plaintiff will recover the costs of this court of the defendants and their sureties.

PER CURIAM.                                                    Modified.