CAROLINA BAGGING COMPANY, A CORPORATION, v. J. M. BYRD, INDIVIDUALLY, AND AS SURVIVING PARTNER OF J. M. BYRD & COMPANY.

(Filed 28 February, 1923.)

**1. Evidence—Nonsuit—Trials—Burden of Proof.**

Where there is conflicting evidence upon the material facts at issue in an action, so that men of fair minds may reach a different conclusion thereon, the issues should be submitted to the determination of the jury under proper instructions from the court; and defendant's motion for nonsuit especially should be denied when the burden is upon him to prove the matters set up by him in defense.

**2. Same—Banks and Banking—Bill of Lading Attached to Draft—Pleas—Payment.**

A local bank received for collection a draft with bill of lading attached against a partnership of which its president was a member, and the president detached the bill of lading from the draft, gave it to his drawee partner, who obtained the goods from the railroad and converted their proceeds to his own use or that of the firm. A few days thereafter the bank failed, and its president committed suicide. In the drawer's action against the drawee, surviving partner, the evidence was conflicting as to whether the drawee firm had instructed the bank to pay the draft out of the firm's deposit, etc., relied upon as a defense, the burden of proof of which was on the defendant: *Held*, defendant's motion as of nonsuit was improvidently granted and a new trial is ordered on appeal.

APPEAL by plaintiff from *Horton, J.,* at October Term, 1922, of VANCE.

Judgment of nonsuit, and plaintiff appealed.

*Hicks & Son for plaintiff.*
*Young, Best & Young and L. L. Levinson for defendant.*

WALKER, J. Plaintiff sold to J. M. Byrd & Company, of Coats, Harnett County, a carload of cotton bagging for $1,125 cash, and had it shipped to them on 21 October, 1920, drawing a draft attached to the bill of lading, which it deposited in the Citizens Bank and Trust Com-

pany of Henderson for collection. Said bank sent the draft and bill of lading to the Bank of Coats, N. C., of which N. T. Patterson, of defendant firm, was president, for collection of the draft and the delivery to defendant firm of the bill of lading.

N. T. Patterson, president of the Bank of Coats, and a member of defendant firm, received the said draft and bill of lading, and he separated the two papers, handed the bill of lading to his partner, J. M. Byrd, who took it to the railway company, to which he delivered it, and from which he received the said cotton bagging, and converted the same to his own use, or to the use of J. M. Byrd & Company. A few days thereafter the Bank of Coats closed its doors, and said N. T. Patterson killed himself, and the plaintiff has received nothing.

J. M. Byrd pleaded, when sued individually and as surviving partner by plaintiff, that he is not liable because the bank was to blame for giving him the bill of lading by the hand of its president, his partner, and in not taking his firm's money, either out of his hand or out of the bank, and sending it to the plaintiff. Judge Horton so held, and nonsuited the plaintiff, and this ruling is the subject of the principal exception.

The plaintiff contends that J. M. Byrd and N. T. Patterson, being partners at the time of this transaction, doing business under the firm name and style of J. M. Byrd & Company, each partner and the firm were jointly and severally liable for the wrongful acts or omissions of the firm, or of any member thereof, when the wrong was done in the ordinary course of its business, and for this plaintiff's counsel invites our attention to the following authorities:

By the great weight of authority, a partnership is bound and is liable for the frauds committed and fraudulent representation of one partner made in the course of the partnership business, though the other partners are innocent of any participation in the fraud. The reason for this rule is found in the general principle of the liability of firms for unlawful acts committed by their agents, within the general scope of their agency. A right to sue the partnership for damages is the usual consequence of the fraud or deceit of one partner acting within the scope of his general partnership authority, and this rule imposing civil liability on an innocent partner, for the fraud of his copartner, is especially applicable where the former receives the fruit or benefit of the fraudulent conduct. 20 R. C. L., sec. 128. Section 146, on page 114, expresses the same principle as applicable, making partners civilly liable for each other's torts, committed in connection with the partnership business, and within the scope of his agency.

The firm is liable for the wrongful acts or omissions of a partner while he is acting in the ordinary course of the firm's business, or with

his copartner's authority. For other separate or individual torts committed by him, neither the firm nor his copartners are liable, unless their assent or ratification is shown. . . . All partners are liable for the conversion by a copartner of the property of a third person, if done in the ordinary course of the firm's business, or within the scope of his authority as such. 30 Cyc., 523-525.

The tort of one partner is considered the joint and several tort of all the other partners; and the partner doing the act is considered the agent of the other partners, when the wrongful act is connected with the business of the firm and is incident to it as the business is carried on; and any one of the partners is chargeable *civiliter* to the same extent to which his partner would be bound. *Heirn v. McOughan,* 32 Miss., 17; 16 Amer. Dec., 588.

A firm is liable for a penalty, although but one party was guilty of the misconduct, upon the theory that all its members are, by the terms of the contract of partnership, constituted agents for each other, and that when a loss must fall upon one of two innocent persons, he must bear it who has been the occasion of the loss, or has enabled a third person to cause it. *Stockwell v. U. S.,* 13 Wallace, 531. See, also, *McIntyre v. Kavanaugh,* 242 U. S., 138; *Hall v. Younts,* 87 N. C., 290.

It is also contended by plaintiff's counsel that the doctrine is not new to us, but has prevailed in this Court time out of mind, it having been long since conceded to be an elementary or horn-book principle, it having dated back to the earliest records of the law, not only to Coke and Blackstone, but the Year Books and Glanville, Bracton and Fleta. It is asserted to have been recognized and clearly stated and enforced in *Hall v. Younts,* 87 N. C., 290, where *Justice Ruffin* substantially said: For, though accustomed to see the point raised as to how far a firm may be answerable for wrongs committed by its individual members, we have never before heard a doubt expressed as to the responsibility of each and every member, for the tortious acts of the firm, and we cannot conceive it to be well founded. As a general rule, partners, though bound by the contracts, are not bound by the torts of each other; that is to say, torts committed with regard to matters disconnected with the partnership business. Nor are they ever held to be criminally responsible for the acts of each other, even though done in the course of trade, but only those who are actually guilty. But partners, like individuals, are responsible for torts committed by their agents under express commands, under the maxim *qui facit per alium per se,* and a partner, acting in the name of the firm touching its business, and with a knowledge of the other members, must be regarded as the agent of all. In such cases, says Collyer on Partnership, sec. 457, the tort is looked upon as the joint and several tort of all the partners, and they may be pro-

ceeded against in a body, or one may be sued for the whole of the injury done. And this doctrine of the text-writer is fully supported by the decisions of the courts. *Gray v. Cropper,* 1 Allen, 337; *Linton v. Hurley,* 14 Gray, 191; *Locke v. Steains,* 1 Met., 560. And in *Doremus v. McCormick,* 7 Gill, 49, and *Boyce v. Watson,* 3 J. J. Marshall (Ky.), 498, the very point was made, as here, in regard to such declarations, and it was held that the declarations of a partner, upon whom the capias had not been served, were properly admitted as evidence against his copartners. The declarations of one partner are admissible against his copartner, not upon the ground of their being parties to the same action, but because of their unity as partners. Plaintiff further refers to *Smoak v. Sockwell,* 152 N. C., 505, where it is said: "It is well established that in case of joint torts the plaintiff may sue either all or some of the wrongdoers, at his election." (This was a case of the tort of a member of a partnership.)

Plaintiff made other serious charges against the defendants, or rather against J. M. Byrd and L. T. Patterson, alleging that they acted together in this transaction to obtain possession of the bill of lading, so that they might get the cotton bagging without paying the sight draft attached to the bill, which it was their clear duty to do, both legally and morally, the more so because of the peculiar and confidential relations of the parties. They thus express this charge: "The bagging was bought from plaintiff by Byrd & Company. Patterson, the other member of the firm, had no right in law or morals to assume a position as collector of the draft for a bank when such position conflicted with his engagement as a partner of defendant company to pay the plaintiff the draft and take the goods. His receiving, converting, and delivering the bill of lading to Byrd was an act of bad faith. He did it as a member of the firm of Byrd & Company, as well as president of the bank." No servant can serve two masters, etc. Matthew, 6:24; Luke, 6:13. This is a part of the law of this State. *Sumner v. R. R.,* 78 N. C., 292; *Froneberger v. Lewis,* 79 N. C., 429. The reason why double agencies are not approved in law is because they cause "double dealing." Reduced to its lowest terms, defendant's position is: "I bought for cash in advance, and because I got it by a trick of my partner without paying for it in advance, you can't make me pay for it at all."

As illustrative of the fraudulent character of what is termed "a conspiracy" of defendants to cheat and defraud the plaintiff, the latter, in their brief, suggest the following dates as bearing upon the question:

"Date of draft and shipment of goods from Henderson—21 October, 1920.

"Date shipment left Durham for Coats—26 October, 1920.

"Date of delivery to Byrd & Company by the railroad and taking up of the bill of lading—27 November, 1920.

"Date the bank closed its doors—4 December, 1920.

"Date of Patterson's suicide—5 December, 1920."

The plaintiff, therefore, finally contends that defendant is liable for the price or value of the cotton bagging, or for damages for its conversion, or for the fraud in so manipulating the papers that they got possession of it without paying the sight draft, and that the Bank of Coats is also liable for negligence, even if it did not participate in the fraud of the other two parties to the transaction.

The defendant's counsel, on the contrary, defend by alleging and by proving, as they assert, that the sight draft was paid in law, if not in fact, as appears by the undisputed proof, and they reached that conclusion by the following reasoning, which is stated synoptically. There seems, they say, to be no case in our Reports exactly in point with the case at bar, but they cite *Cotton Oil Co. v. Sellars,* 89 S. E., 454, in which they say that the facts are on all fours with this case, and in which it was held that the delivery of a bill of lading to a customer who had sufficient funds on deposit to pay the amount of a draft attached, coupled with an instruction to the bank to pay said draft out of those funds, which the bank agreed to do, amounted to a payment by the customer of said draft, although the bank closed its doors the following day and failed to make remittance of said funds. It is also said in Michie on Banks and Banking, at p. 1414: "Where a bank sent a note to a correspondent for collection, and the latter, which had the maker's money on deposit, with instruction to pay it on the note, charged the amount to the maker, and credited it to the sender of the note in regular course of business, it constitutes a payment, though the bank failed the next day, and returned the note without endorsing anything thereon, or accounting for the collection." And they further contend that, conceding for the purpose of this case what the record clearly discloses, not only that the collecting bank, as agent of the creditor or drawer, impliedly consented to apply the funds in its hands belonging to the debtor, so far as it might be necessary, to the payment of the draft, in compliance with the usual custom between its depositor, the drawer, and the bank, as to such drafts, and nothing whatever appears in evidence to negative the conclusion that the agent of the creditor so consented to apply the money of the debtor as directed, but the fact that the collecting bank surrendered to the debtor the bill of lading attached to the draft, after receiving instructions from him to charge the amount of the draft against his account, amounted in effect to an express agreement by the bank to apply the money in its hands as directed by the debtor, and was an affirmative act on the part of the bank showing its acceptance of that money as

agent of the creditor, and for this proposition counsel rely on 22 A. & E., p. 578, which they think supports their contention, and they deem ample authority for the position that where the agent of the creditor to receive payment is also agent of the debtor, and as such receives money belonging to the latter which he has been directed by the latter to apply in payment of the creditor's claim, the payment is not to be considered complete, so as to discharge the liability of the debtor to the creditor, until the common agent has expressly assented to so apply the money received by him, or has done some act showing acceptance of such money as agent of the creditor. The effect of such debit and credit of accounts has chiefly arisen where the common agent was a bank, and this principle counsel further contend directly and strongly apply to the very facts of this case.

As the case must be returned to the lower court for another trial, we prefer not at this time to express any opinion as to the merits of the respective contentions, but to leave that court open-minded, so that it will not be embarrassed by any apparent leaning on our part to the one side or the other.

But we will say, in order to dispose of this appeal, that the court erred in granting a nonsuit upon the evidence, which was not all one way, and did not tend to only a single conclusion. There was sufficient controversy and doubt as to the essential facts to require the intervention of a jury for the purpose of finding what they are and applying the law thereto under the guidance of the presiding judge. As an example of the conflict in the evidence, the witness, W. P. Gholson, testified: "Mr. Byrd told me he had funds on deposit in the bank with which to pay the draft, and that he ordered the bank to pay it," while in another place in the record he is reported to have testified that Mr. Byrd did not tell him that he had authorized and directed the bank to pay the draft, and that he did not see the cashier of the bank on his visit to the town of Coats; and further, that Mr. Byrd told him that he got the bill of lading from the bank; and, also, that Mr. N. T. Patterson had charge of the checking account, and that he (Byrd) did not know anything about the payment. There are some other discrepancies, and some apparent contradictions, in the evidence, but we need not devote attention to them at the present time, as they may be cleared up at the next hearing, and a perfectly consistent account of the entire matter be given. There were some questions of evidence, but they are not of importance now, as the entire complexion of the case may be changed hereafter.

But in this case not only is there a conflict of evidence to be settled by a jury, as two different views of it are presented, and two intelligent men may reasonably differ as to it, but the plea here is payment, and the burden of proof is upon the defendant who pleads it, and a nonsuit

is not proper in such cases. *Kyles v. R. R.,* 147 N. C., 396; *Currie v. Gilchrist, ibid.,* 656. In the *Kyles case, supra,* the Court said: "In considering this question the courts will accept the evidence in the most favorable light to the plaintiff, and if there is any evidence, or if different minds can draw different conclusions, it is the duty of the trial judge to submit the case to the jury," citing *House v. R. R.,* 131 N. C., 103; *White v. R. R.,* 121 N. C., 484; *Wittkowsky v. Wasson,* 71 N. C., 454; *Moore v. R. R.,* 128 N. C., 455.

Upon a full consideration of the case and the able and learned arguments, our opinion is that there was error, and there must be another trial.

Reversed.