RUSSELL L. PEED AND J. M. BOOTH v. BURLESON'S, INC., E. C. BURLESON, CHARLES R. PINKSTON AND RICHARD A. BROWN.

(Filed 19 September, 1956.)

**1. Trover and Conversion §§ 1, 2—**

Where the employee-driver of a truck wrongfully sells the cargo to a stranger who uses the property in his own business, such third person acquires no title and is liable to the true owner on the basis of conversion, with the measure of damages ordinarily being the value of the property at the time and place of conversion, with interest.

**2. Sales § 11—Where seller is required to deliver goods to purchaser's plant, delivery to the carrier is not delivery to purchaser.**

As a general rule, under a contract of sale which provides for a sale f.o.b. the point of shipment, the carrier is the agent of the purchaser, and title passes upon delivery to the carrier, but where the evidence is sufficient to show that the contract by the seller was to deliver the goods at the purchaser's plant at a designated price per unit, plus a designated sum per unit for freight, the evidence brings the case within the exception to the general rule, and, the seller being required to make delivery, the carrier is the seller's agent to perform this duty, so that delivery to the carrier is not delivery to the buyer, and the seller assumes the risk in carriage.

**3. Trover and Conversion § 2—**

Where, in an action for conversion of goods bought from the carrier's driver, the evidence, considered in the light most favorable to plaintiffs, does not show that plaintiff owner had been fully reimbursed for the loss by plaintiff carrier, nonsuit as to plaintiff owner on the ground that he had no interest in the subject matter should be denied.

**4. Corporations § 25b—**

In the absence of conspiracy, an officer of a corporation cannot be held individually liable for the tortious conversion of property by the corporation when such officer had nothing to do with the transaction and does not learn of it until some time after it had been consummated.

JOHNSON, J., not sitting.

APPEAL by plaintiffs from *Morris, J.,* June Civil Term, 1956, of BEAUFORT.

Tort action to recover the value of 320 bags of potatoes, allegedly converted by defendants to their own use.

On the former appeal, *Peed v. Burleson's, Inc.,* 242 N.C. 628, 89 S.E. 2d 256, this Court affirmed judgment overruling demurrer interposed by defendants on the ground of misjoinder of parties and causes of action. A statement of the essential allegations of the complaint will be found there. Answering, defendants admitted that defendant Burleson's, Inc., is a North Carolina corporation, with principal office or place of business in Asheville; that defendant E. C. Burleson is said corporation's president and treasurer; and that Charles R. Pinkston is said corporation's vice-president and secretary. Apart from these admissions, defendants denied the allegations of the complaint.

At the close of plaintiffs' evidence and upon motion of defendants Burleson's, Inc., E. C. Burleson and Charles R. Pinkston, the court entered judgment of involuntary nonsuit and dismissed the action as to said defendants. Plaintiffs excepted and appealed, assigning as error the entry of said judgment.

*John A. Wilkinson for plaintiffs, appellants.*

*Rodman & Rodman, J. W. Haynes, and Zebulon Weaver, Jr., for defendants, appellees.*

BOBBITT, J. Evidence was offered tending to show these facts:

1. On Friday, 2 July, 1954, at Aurora, North Carolina, plaintiff Peed, the owner of 320 bags of Irish potatoes, U. S. No. 1, size A, Sebago variety, arranged with plaintiff Booth, a truck broker, for the transportation thereof to Licek Potato Chip Company of Decatur, Illinois. Peed agreed to pay Booth for such transportation $1.25 per bag, plus 3% transportation tax. Booth agreed to deliver the potatoes in good condition and on time.

2. Booth, a commission agent for truckers, arranged with one Paul Bullock, who then had four trucks engaged in hauling potatoes out of Aurora, for the actual transportation of the potatoes to Decatur, Illinois. On Friday, 2 July, 1954, the potatoes were loaded on one of

Bullock's trucks; and thereupon, with defendant Brown, Bullock's driver, in charge, the loaded truck left Aurora for Decatur.

3. On Saturday, July 3rd, Brown was temporarily detained in Mt. Airy, North Carolina, on account of improper registration papers. Bullock, by telephone, arranged for his release. On Wednesday, July 7th, Brown was in Asheville, North Carolina, in custody of the police.

4. On Thursday, July 8th, upon arrival in Asheville, Bullock discovered that Brown had delivered the potatoes to defendant Pinkston, from whom Brown had received $1.00 per bag, a total of $320.00; and that the potatoes were received by defendant corporation and handled in the course of its business.

5. When Bullock located Brown in Asheville, he got from him two bus tickets, Asheville to New York, which Brown had purchased. Bullock redeemed these tickets, receiving $30.00 for them, which he kept. Bullock had given Brown $150.00 to defray his expenses on the trip between Aurora and Decatur. Brown was prosecuted and sent to prison.

6. On Monday, July 5th, the market price of potatoes at Aurora was $4.50 per bag. The cost of transportation from Aurora to Asheville was somewhere around $1.00. During the week immediately after Sunday, July 4th, the price of potatoes "jumped."

7. Neither plaintiffs nor Bullock recovered any of the potatoes from defendants or compensation therefor.

8. Plaintiffs have recovered nothing from Bullock or Brown.

9. Peed has paid nothing on account of transportation charges.

10. By reason of his guarantee for safe and prompt delivery of the potatoes to Peed's customer in Decatur, Illinois, Booth, prior to the commencement of this action, paid to Peed the sum of $1,040.00.

Other facts, bearing on the determinative question presented, will be stated below.

The tort of conversion is well defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." 89 C.J.S., Trover & Conversion, sec. 1.

Brown had no title to or interest in the potatoes. Hence, defendants acquired none by their purported purchase. *Wilson v. Finance Co.*, 239 N.C. 349, 356, 79 S.E. 2d 908, and cases cited. By conversion of the potatoes to their own use, defendants became liable to the owner thereof. Ordinarily, in such case, the measure of damages recoverable by the owner would be the value of the potatoes at the time and place of conversion, with interest. 89 C.J.S., Trover & Conversion sec. 163; 53 Am. Jur., Trover & Conversion secs. 94 and 95; *Sledge v. Reid*, 73 N.C. 440; *Hall v. Younts*, 87 N.C. 285.

Appellees insist that neither Peed nor Booth has a cause of action for conversion. They cite and rely on this general rule: "Where the con-

tract of sale provides for a sale f.o.b. the point of shipment, the title is generally held to pass, in the absence of a contrary intention between the parties, at the time of the delivery of the goods for shipment at the point designated." 46 Am. Jur., Sales sec. 442; *Hunter v. Randolph,* 128 N.C. 91, 38 S.E. 288; Annotation: 101 A.L.R. 292. This rule applies when, under the contract of sale, the carrier is the agent of the vendee; for in such case title passes upon delivery to the vendee's agent. *Wooley v. Bruton,* 184 N.C. 440, 114 S.E. 628.

The evidence discloses only these details of the contract between Peed and his customer. Peed testified, on cross-examination, that he sold the potatoes "f.o.b. plus freight at $3.25." His testimony, on direct examination, was explicit: "I . . . sold them (the potatoes) . . . to the Licek Potato Chip Company of Decatur, Illinois, *for delivery at their plant,* for a price of $3.35 per bag, plus $1.25 a bag freight, and a 3% transportation tax." (Italics added.) Peed was to pay the transportation charges and bill his customer for the amount thereof in addition to the amount of the agreed sale price. This evidence was sufficient to support a finding that Peed's contract of sale required that he make delivery of the potatoes to his customer *at its plant* in Decatur, Illinois, and that the truck carrier was *his* agent for that purpose.

The evidence, when considered in the light most favorable to plaintiff, brings the case within this recognized exception to the general rule, viz.: "If the seller by his contract undertakes to make the delivery himself at the point of destination, thus assuming the risk in the carriage, the delivery to a carrier is not a delivery to the buyer. In such a case, the delivery to the carrier is a delivery to it as the agent of the seller to perform the duty of the seller as to transportation to the place of delivery." 46 Am. Jur., Sales sec. 173. While our General Assembly has not adopted the Uniform Sales Act, it is noted that the statement just quoted is in accord with the explicit provisions of sec. 19, Rule 5, thereof.

Appellees insist that the nonsuit as to Peed must be affirmed because he has suffered no loss. Booth paid Peed $1,040.00, that is, $3.25 per bag for 320 bags. As indicated above, the record discloses a conflict in Peed's testimony. If the contract of sale provided for the payment of $3.35 per bag, Peed has not been fully reimbursed. Hence, in considering nonsuit, we do not reach the question as to whether Peed, if fully reimbursed in respect of the sale price, can recover more than his customer was obligated to pay had delivery been made as contemplated. In this connection, it is noted that the evidence fails to disclose that Peed has made any payment to Licek Potato Chip Company on account of his failure to make delivery of the potatoes or that this company makes any claim on Peed for damages on account thereof.

BROTHERS *v.* JERNIGAN and SKINNER *v.* JERNIGAN.

While diverse inferences may be drawn therefrom, the evidence, when considered in the light most favorable to plaintiffs, tends to show that the fair market value of potatoes in Asheville at the time and place of the alleged conversion was in excess of $3.35 per bag.

While the judgment of involuntary nonsuit is reversed in all other respects, it must be affirmed as to defendant E. C. Burleson, individually. There was no evidence that he participated in a conspiracy to acquire the potatoes. Pinkston alone dealt with Brown. Defendant corporation received and handled the potatoes. See *Lavecchia v. Land Bank,* 215 N.C. 73, 1 S.E. 2d 119. As far as the evidence discloses, Burleson, individually, had nothing to do with the transaction and did not learn of it until some time after it had been consummated. The mere fact that defendant corporation, of which Burleson was an officer and in which presumably he had some financial interest, became liable by virtue of its acceptance of the benefits of Pinkston's acts, would not seem a sufficient basis to impose individual liability upon Burleson.

While plaintiffs alleged a conspiracy on the part of defendants, the gravamen of their case is tortious conversion. *Manley v. News Co.,* 241 N.C. 455, 85 S.E. 2d 672, cited by appellees, is distinguishable.

It is noted that the record before us does not disclose the status of this action in relation to defendant Brown.

Affirmed as to defendant Burleson.

Reversed as to defendant Pinkston and as to defendant Burleson's Inc.

JOHNSON, J., not sitting.

RODMAN, J., took no part in the consideration or decision of this case.