846 F.2d 69
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Clifton CHERRY, Margaret Cherry, Plaintiffs-Appellees,
v.
The PRIME-MOVER CORPORATION, a division of Hon Incorporated,
Defendant- Appellant.
 No. 87-2079.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 5, 1988.
Decided April 18, 1988.
 
 William Louis Young, Bynum M. Hunter (William S. Byassee, Smith, Helms, Mulliss & Moore on brief) for appellant.
 Nicholas Gilman (Gilman, Olson & Pangia, Robert A. Mineo, Robert R. Smiley, III, Smiley & Mineo, William P. Harper; Hardee, Hardee & Harper on brief) for appellees.
 Before K.K. HALL and CHAPMAN, Circuit Judges, and FRANK W. BULLOCK, Jr., District Judge, for the Middle District of North Carolina, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 This is a personal injury action arising out of an accident involving a forklift truck manufactured by defendant-appellant Prime Mover. The district court found that the action was not barred by the statute of repose. After a jury trial, the court awarded damages to plaintiff Clifton Cherry and his wife, Margaret Cherry, in the amount of $300,000. The court also allowed a postjudgment motion for pre- and postjudgment interest and did not reduce the verdict amount by Cherry's workers' compensation award before calculating prejudgment interest.
 
 
 2
 Finding it unnecessary to reach the other issues of the case, we find the district court erred in finding plaintiffs' claims were not time-barred under the statute of repose and we reverse.
 
 
 3
 * Plaintiff Clifton Cherry was employed as a forklift truck driver for the National Spinning Company ("National") in Washington, North Carolina. While on the job operating an RR-20 forklift truck, manufactured by defendant Prime Mover, on July 23, 1980, Cherry was seriously injured when he lost control of the forklift and was caught between the wall of National's warehouse and the RR-20. Cherry asserted that while driving the forklift down an aisle, a vibration in the steering mechanism caused the wheel to turn suddenly, which in turn caused the forklift to spin "on a dime." As a result, Cherry was thrown from the forklift and crushed against a wall. The forklift continued down the aisle for several feet. There was some evidence that the floor in the area of the accident was wet from rain that seeped in under a warehouse door.
 
 
 4
 On July 22, 1983, Cherry and his spouse brought an action in the United States District Court for the Eastern District of North Carolina for his personal injuries and her loss of consortium. Defendant asserted as defenses: lack of negligence on its part, Cherry's contributory negligence, and a bar of the action based upon North Carolina's six-year statute of repose, see N.C.Gen.Stat. Sec. 1-50(6). Summary judgment on the repose issue was denied on October 18, 1984, and the case went to trial in April 1985. On April 19 the jury returned a verdict in favor of Cherry in the amount of $275,000, and in favor of his wife in the amount of $25,000.
 
 
 5
 Appellant moved for judgment notwithstanding the verdict on the issues of repose and insufficient evidence of proximate cause. Prime Mover asserted that the RR-20 involved in the action was "purchased" more than six years before the action was brought by Cherry: either May 28, 1977, the date of order, or June 28, 1977, the date the RR-20 was shipped by Prime Mover to National. Thus, it argued more than six (6) years had expired before July 22, 1983, the date the action commenced. Prime Mover also asserted that there was insufficient evidence to support the jury's finding that the RR-20 proximately caused the accident.
 
 
 6
 Prime Mover also sought to modify the judgment by the amount of the North Carolina Industrial Commission award to Cherry: $162.67 per week for the rest of his life. This award was based on a finding of total and permanent disability and calculating Cherry's life expectancy from the date of injury at 35.06 years. Similarly, on May 24, 1985, plaintiffs moved to modify the judgment to include pre- and postjudgment interest.
 
 
 7
 The district court amended the judgment in several particulars that are not relevant to this opinion.
 
 
 8
 Prime Mover appeals this modified judgment. It contends that Cherry's claims were barred by North Carolina's statute of repose, that there was insufficient evidence that a design defect in the RR-20 proximately caused the accident, that the district court improperly applied the North Carolina statute allowing credit against civil awards for workers' compensation awards, and that the district court erred in awarding and in its calculation of prejudgment interest.
 
 II
 A. The Statute of Repose
 
 9
 The North Carolina statute of repose provides as follows:
 
 
 10
 No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.
 
 
 11
 N.C.Gen.Stat. Sec. 1-50(6). This section is not a procedural limitation, but a substantive definition of rights, which must be proved as a condition precedent to bringing an action to which the statute applies. Bolick v. American Barmaq Corp., 306 N.C. 364, 370, 293 S.E.2d 415, 419 (1982). The threshold question in our consideration is whether Cherry met the terms of the repose statute affording him a product liability action against Prime Mover. This inquiry must center upon which event in a series of transactions relating to sale of the alleged defective RR-20 among the manufacturer, Prime Mover, its dealer, the Gregory Poole Company ("Poole"), and Cherry's employer, the National Spinning Company, constituted the "initial purchase for use or consumption." See N.C.Gen.Stat. Sec. 1-50(6).
 
 
 12
 B. What Constitutes a "Purchase" Under North Carolina Law
 
 
 13
 North Carolina jurisprudence reveals no construction of "purchase" under Sec. 1-50(6). Therefore, since the transaction falls under the North Carolina Uniform Commercial Code ("UCC" or "Code"), see N.C.Gen.Stat. Secs. 25-2-102, -105(1), we shall examine the order and sales transactions for the RR-20 under the definitions of the Code.
 
 
 14
 On April 28, 1977, National ordered two RR-20 forklift trucks from Prime Mover through its distributor, Poole, as is customary in purchasing Prime Mover machines. One of these forklifts was the RR-20 involved in the accident with Mr. Cherry. As part of its order, National included certain additional specifications: a tilting mask, a 48-inch fork/platform length, a centering guide for the platform, and a high-speed lift accessory. National incurred additional charges for these options, and the purchase order form provided for "billing to" Poole "for" National. Prime Mover shipped the RR-20s to National free-on-board (FOB) from Muscatine, Iowa on June 28, 1977, as indicated in the bill of lading. FOB the place of shipment requires the seller to provide for shipment of the goods and bear the risk and the expense of putting them into the hands of the carrier. N.C.Gen.Stat. Sec. 25-2-319(1)(a). This process requires delivery of a document allowing a buyer to take possession of the goods (e.g., a bill of lading). Id. Sec. 25-2-504(b).
 
 
 15
 On June 29, 1977, Prime Mover billed Poole for the RR-20s serial numbered 1466 and 1467. Poole, in turn, invoiced National for the machines on July 26, 1977. The normal custom among the parties was for National to take the trucks into its possession, and if any problems with the truck arose, the trucks would be serviced by Poole or sent back to the Prime Mover factory for servicing. National tendered payment for the trucks on September 23, 1977.
 
 
 16
 The parties disagree about which of the aforementioned events constituted a "purchase" under the UCC and under the statute of repose. Cherry argues that a purchase did not take place until July 26, 1977, when Poole invoiced National for the forklifts and they were assigned by serial number to the contract. Until that time, he asserts, National was a bailee, the RR-20s having been delivered to National merely for convenience pending service by Poole.
 
 
 17
 The term "purchase" is defined in the UCC as including "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property." N.C.Gen.Stat. Sec. 25-1-201(32). National clearly had a possessory interest in the RR-20s upon shipment. The bill of lading provided for FOB shipment to National from Muscatine, Iowa. Cherry does not contest the fact that National, in fact, took possession of the trucks upon arrival at National's facilities. The Code provides:
 
 
 18
 (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading
 
 
 19
 (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment....
 
 
 20
 Id. Sec. 25-2-401(2)(a). The Code further addresses FOB shipment terms as follows:
 
 
 21
 [W]hen the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this article (G.S. 25-2-504) and bear the expense and risk of putting them into the possession of the carrier....
 
 
 22
 Id. Sec. 25-2-319(1)(a).
 
 
 23
 The primary North Carolina case construing FOB terms is Peed v. Burleson's, Inc., 244 N.C. 437, 94 S.E.2d 351 (1956), in which the North Carolina Supreme Court stated as follows:
 
 
 24
 "Where the contract of sale provides for a sale f.o.b. the point of shipment, the title is generally held to pass, in the absence of a contrary intention between the parties, at the time of the delivery of the goods for shipment at the point designated."
 
 
 25
 244 N.C. at 439-40, 94 S.E.2d at 353; see also Marshville Rendering Corp. v. Gas Heat Eng'g Corp., 10 N.C.App. 39, 177 S.E.2d 907 (1970). Given the Code's provisions and the explicit language of Peed, we find that title passed to National on June 28, 1977. Since both a possessory interest and title in the RR-20s vested in National upon delivery to the carrier, the "initial purchase for use or consumption" occurred at that time. Cf. Hunter v. Randolph, 128 N.C. 91, 38 S.E. 288 (1901) (indicating that risk of loss, as well as title and possession, passes to vendee upon delivery to carrier). The plaintiffs' action was barred by the statute of repose, having been brought on July 22, 1983, more than six years after its "initial purchase."
 
 
 26
 In addition, there are no facts indicating that National's conduct with respect to the RR-20s did not constitute acceptance. National had the right to inspect the RR-20s tendered by the Prime Mover. See N.C.Gen.Stat. Sec. 25-2-513(1). It had a reasonable time to inspect the forklifts and reject them if not conforming. Evidence, in the form of a Prime Mover internal memorandum, was introduced by Cherry attempting to show that an RR-20 was returned to Prime Mover for certain adjustments. Plaintiff, however, has not shown that such RR-20 was the one involved in the accident. Prime Mover also had the right to cure any purported defects in the equipment. N.C.Gen.Stat. Sec. 25-2-508(1). The practice whereby National would take the trucks pending dealer preparation and inspection by Poole, which Cherry attempts to construe as a bailment, seems to fit within the Code framework as acceptance "on the reasonable assumption that [a] nonconformity be seasonably cured." N.C.Gen.Stat. Sec. 25-2-607(2). To rule otherwise would do harm to the Code's policy favoring good faith performance under contract and the liberal provisions allowing cure or replacement of nonconforming goods.
 
 III
 
 27
 In conclusion, we hold that a "purchase" took place for the purposes of the statute of repose on June 28, 1977, when the goods were placed by Prime Mover into the hands of the carrier. We reject plaintiffs' contention that a "purchase" is dictated by the formalities of an invoice bearing the serial number of the forklift. Cherry's action, then, is extinguished under the statute of repose. This holding is in keeping with the broad definition of "purchase" under the UCC. Therefore, the judgment of the district court is
 
 
 28
 REVERSED.