**B.E.E. INTERNATIONAL, LTD.,
B.E.E. International, Inc., Tal
Shechter, Plaintiffs,**

**v.**

**Michael HAWES, Nicole Hawes,
Belovo Incorporated, Belovo
S.A., Defendants.**

**No. 1:02 CV 00212.**

United States District Court,
M.D. North Carolina.

April 6, 2005.

W. Thad Adams, III, Matthew J. Ladenheim, Adams Evans P.A., Charlotte, NC, for Plaintiffs.

R. Thompson Wright, Joseph Robert Beatty, Hill Evans Duncan Jordan & Beatty, PLLC, Greensboro, NC, Jon L. Roberts, John F. Mardula, Shauna M. Wertheim, Roberts Abokhair & Mardula, LLC, Reston, VA, for Defendants.

OSTEEN, District Judge.

This matter came on for a bench trial on September 27, 2004. Having heard evidence and arguments, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff B.E.E. International, Ltd. ("BLTD") is an Israeli corporation. Plaintiff B.E.E. International, Inc. ("BEEI") is a Delaware corporation, whose principal office is located in Mansfield, Massachusetts. BEEI is a subsidiary of BLTD.

2. Plaintiff Tal Shechter is a resident of Massachusetts and is the president of BEEI.

3. Defendants Michael Hawes and Nicole Hawes are citizens and residents of Moore County, North Carolina.

4. Defendant Belovo Incorporated ("Belovo") is a North Carolina corporation with its principal office and place of business in Moore County, North Carolina.

5. Plaintiff BLTD was organized in Israel in 1994 to manufacture and sell emulsifying equipment based upon designs created by Plaintiff Shechter. In 1996, BLTD began selling emulsifying equipment in Japan, and in 1998, the company decided to expand its sales to the United States. After exploring the use of distributors in the United States, BLTD decided it would enter the market by incorporating a U.S. subsidiary to be its distributor.

6. At the time of BLTD's decision to enter the U.S. market, Mr. Hawes was employed in various sales and marketing capacities by Ingersoll–Rand Corporation, which manufactures and sells capital equipment worldwide. Mr. Hawes contacted a management recruiter about the possibility of leaving Ingersoll–Rand and joining a company where he would have the opportunity of owning and managing his own company. The management recruiter gave Mr. Hawes' name to Mr. Shechter. Thereafter, Mr. Shechter and Mr. Hawes had several conferences and telephone conversations regarding Mr. Hawes becoming the general manager of BLTD's yet-to-be-organized U.S. subsidiary.

7. On June 8, 1998, Mr. Shechter drafted and sent by facsimile a letter to Mr. Hawes (the "Letter Agreement"). In the Letter Agreement, Mr. Shechter stated:

> On behalf of BEEI, I am pleased to offer you the position of Manager of U.S. Operations with an annual gross salary of $70,000.00. BEEI will pay sales commission of 12% from the net sales price, upon receiving payments from customers. This commission will includes [sic] payments to representatives as well as to you. As we discussed, there will be no commission for the first two machines sold.

8. Mr. Hawes accepted the offer of employment contained in the Letter Agreement by telephone. During their telephone conversation, Mr. Hawes and Mr.

Shechter discussed that, as manager, Mr. Hawes would perform any tasks necessary to successfully market and sell BLTD's equipment in the United States. They did not, however, discuss the meaning of the phrases "net sales price" and "upon receiving payments from customers" or whether sales commissions would be paid on machine rentals and spare parts orders.

9. Mr. Hawes began working for BEEI in July 1998 and set up its U.S. headquarters in his home in Southern Pines, North Carolina. BEEI was incorporated as a Delaware corporation in September 1998, and was later registered in North Carolina. Mr. Shechter, who continued to reside in Israel, was named the president of BEEI and Mr. Hawes became general manager. BEEI's books and financial records were maintained remotely by an employee of BLTD.

10. Mr. Shechter remained in regular contact with Mr. Hawes via telephone and e-mail. As would be expected with a small startup company, Mr. Shechter and Mr. Hawes had frequent discussions concerning how best to adapt and structure a business model which would be successful in the United States. The parties' business arrangement was team-oriented, informal, and flexible.

11. Mr. Hawes spent the rest of 1998 and the greater part of 1999 learning the technology behind BLTD's machines; understanding the potential markets and industrial applications for the machines; developing sales leads within the food, cosmetic, chemical, and pharmaceutical markets; and making sales calls. Mr. Hawes also set up a laboratory in Southern Pines, North Carolina, to demonstrate BLTD's equipment and to process customers' sample products. There were no sales of BLTD equipment made by BEEI during this period.

12. In the fall of 1999, in order to prove the benefits of BLTD's equipment and create a much needed stream of income, BEEI began renting its equipment to customers. Renting equipment increased the likelihood customers would buy BLTD equipment because it allowed customers to operate the equipment in their own plants and with their own production personnel before committing to a purchase. In all cases but one (Johnson & Johnson), where a customer rented a machine, the customer later purchased the machine. Mr. Hawes was not paid any commissions on rentals during this time.

13. In or about September 1999, Mr. Hawes sold his first machine on behalf of BEEI to Estée Lauder. Because the Letter Agreement provided Mr. Hawes would not receive commissions for the first two machines sold, and the Estée Lauder sale was Mr. Hawes' "first sale," Mr. Hawes did not receive a commission on the sale.

14. In October 1999, Mr. Shechter and Mr. Hawes agreed BEEI could increase the exposure rate of BLTD equipment by utilizing independent sales representatives. The sales representatives would establish the initial contact and Mr. Hawes would make a sales presentation, process the customer's sample product, set up the rental machine at the customer's plant, train the customer's personnel, maintain the equipment, obtain the purchase order, and close the sale. Although Mr. Shechter and Mr. Hawes had previously discussed the possibility of using independent sales representatives, Mr. Hawes had not utilized them, in part, because the Letter Agreement required sales representatives to be paid from the 12% commission Mr. Hawes was to receive.

15. As part of their discussions regarding independent sales representatives, Mr. Shechter and Mr. Hawes discussed raising the price scheme of BLTD equipment.

This discussion was based, in part, on the relatively low cost of the equipment compared to its potential benefits in key industries, such as the pharmaceutical industry. The new price scheme discussed would allow BLTD to increase the transfer price of equipment sold to BEEI, allow BEEI to raise the prices to the public, and allow for the payment of 12% commission to Mr. Hawes in addition to any independent sales representative commission. The benefits of the new price scheme, as discussed by Mr. Shechter and Mr. Hawes, were to raise profits and incentives at each step of the sale process: BLTD, BEEI, the independent sales representatives, and Mr. Hawes. Mr. Shechter orally agreed to the new pricing and commission scheme, and the scheme was implemented by Mr. Hawes.

16. On or about December 1, 1999, Mr. Hawes, on behalf of BEEI, entered into an independent sales representative agreement with Engineered Processing Equipment, Inc. ("EPEI"). The EPEI agreement was drafted by Mr. Hawes and subsequently approved by Mr. Shechter. The agreement provided BEEI would pay EPEI sales commission rates varying from 6% to 15% for the sale of BLTD equipment, 10% for the rental of BLTD equipment, and 10% for the sale of spare parts and accessories. The EPEI agreement was later used as a form agreement for subsequently hired independent sales representatives.

17. Beginning in January 2000, Nicole Hawes, the wife of Mr. Hawes, was hired as part-time bookkeeper for BEEI. Her duties included paying BEEI bills, salaries, and commissions; invoicing BEEI customers; entering financial transactions for BEEI into the computerized accounting program; sending financial statements to BLTD; and assisting BLTD with the purchase of parts from U.S. sources. The accounting system was set up by BEEI with the assistance of a local certified public accountant. Mrs. Hawes forwarded monthly profit and loss details and other financial reports to Mr. Shechter and to the chief financial officer of BLTD in Israel. These reports were consistent with Mr. Shechter's directions and contained sufficient detail for Mr. Shechter and others at BLTD to view the payment of all sales commissions and payments to independent sales representatives.

18. By the summer of 2000, BEEI's sales efforts were being hampered by a lack of a BLTD machine with which to make customer demonstrations. Since late 1999, PPG, one of BEEI's customers, had been renting BEEI's only demonstration machine at a rate of $2,000 per month. In July 2000, Mr. Hawes suggested to Mr. Shechter that the demonstration machine either be removed from the rental program or sold outright to PPG. Mr. Shechter suggested offering the machine to PPG for sale at a discounted rate of $50,000. Mr. Hawes suggested selling the machine to PPG for $80,000. Mr. Shechter and Mr. Hawes agreed if the used machine could be sold to PPG for $80,000, the 10 months of rental payments received from PPG would be considered Mr. Hawes' "second sale" under the Letter Agreement, allowing Mr. Hawes to take commissions (for the first time) on the PPG sale. The demonstration machine was sold to PPG for $80,000 and Mr. Hawes was paid a 12% commission of $9,600 on the sale.

19. Sales activity and interest from customers increased significantly in the latter half of 2000 and the year 2001. Once Mr. Hawes had completed his "second sale," Mr. Hawes caused himself to be paid [1] commissions on all profit-generating

1. BEEI paid Mr. Hawes upon his instructions to Mrs. Hawes to issue him a check. Mrs.

customer transactions in which he was involved. In accordance with BEEI's new pricing and commissions scheme, BEEI paid Mr. Hawes 12% commission on equipment sales and rentals obtained with the help of EPEI, over and above the commission payable to EPEI under its independent sales representative agreement. Commissions paid by BEEI to EPEI for these transactions totaled $800 in 2000, $28,974.12 in 2001, and $6,300 in January 2002.[2] Additionally, BEEI paid Mr. Hawes $18,465.60 in commissions for equipment rentals[3] and $7,764.12 on spare parts sold over "cost." BEEI paid these commissions because, although the Letter Agreement did not specifically reference rentals and spare parts commissions, Mr. Hawes understood the term "sales" in the Letter Agreement to mean all profit-generating income. Regular financial reports sent to Mr. Shechter and BLTD reflected the payments.

20. Although sales activities and interest in BLTD products had increased in 2000 and 2001, BEEI and BLTD continued to suffer cash flow and capitalization problems. To combat these problems, Mr. Hawes paid BEEI expenses on a priority system: (1) vendors; (2) taxes; (3) salaries; (4) commissions; (5) general overhead; and (6) BLTD transfer prices. BEEI paid commissions when cash flow allowed, resulting in payments at varying stages of a transaction. Sometimes BEEI paid commissions in full from a customer's initial deposit, while at other times BEEI paid commissions only when several customer payments were received, when a customer had paid in full, or even months after a customer had paid in full. The irregular timing of commission payments was reflected in the regular financial reports sent to Mr. Shechter and BLTD.

21. In late 2001, Mr. Shechter told Mr. Hawes he intended to move from Israel to Boston, Massachusetts, and establish BEEI's new headquarters there, instead of North Carolina. As a result of the relocation of company headquarters, Mr. Hawes decided to resign.

22. On January 2, 2002, Mr. Hawes caused himself to be paid commissions of $130,350.19 and caused BEEI to make tax deposits on his behalf with the Internal Revenue Service and North Carolina Department of Revenue in the amounts of $51,993.15 and $4,559.61, respectively. The commissions and tax deposits BEEI paid Mr. Hawes totaled $186,902.95. Because of BEEI's priority system and available cash, commissions and taxes were paid from customer deposits. Final delivery of the equipment had not been made and final payments had not yet been received.

23. On January 4, 2002, Mr. Hawes notified Mr. Shechter he was resigning and gave his two-week notice. Mr. Hawes continued to perform services for the com-

---

Hawes would verify Mr. Hawes' commission calculations to determine if they were mathematically accurate and if available funds allowed the payment of commissions. She did not make policy decisions as to whether Mr. Hawes was actually entitled, under the Letter Agreement, to such commissions. Those decisions were made solely by Mr. Hawes.

2. Plaintiffs attempted to introduce evidence, by way of check stubs, at trial showing additional payments were made to EPEI in the year 2002. The evidence, however, was not admitted because the check stubs were available but were not produced to the opposing party when requested during discovery.

3. There was dispute at trial as to whether a particular transaction between BEEI and Ben Venue was an installment sale or a rental plan. The court finds the evidence favors an installment sale to Ben Venue and has reduced the rental commissions figure accordingly.

pany, excluding four days when he was on a personal trip, until January 20, 2002. His services included traveling to Pennsylvania to assist with the installation of BLTD equipment at a customer's site. Mr. Hawes incurred travel expenses of $1,403.22, which were never reimbursed by BEEI according to its regular practice. Additionally, BEEI never paid Mr. Hawes his salary for one-half of January 2002, in the amount of $2,916.67.

24. Mrs. Hawes also gave notice of her resignation in January 2002. During January 2002, Mrs. Hawes performed 28.5 hours of service for BEEI, earning $570, for which she has never been paid.

25. On January 20, 2002, Mr. Shechter called Mr. Hawes and demanded the January 2 commissions be returned to BEEI. Mr. Shecter contended no commissions were payable under the Letter Agreement until the final payment had been made by the customer, which is usually after the machine had been shipped and delivered. Mr. Hawes contended, according to the adopted priority system, commissions were payable once the customer committed to purchase the machine, made at least some payment, and BEEI cash flow allowed the payment of commission. Mr. Hawes refused to return the commission payments.

26. BEEI was eventually paid in full by customers for all orders on which Mr. Hawes was paid a commission on January 2, 2002. However, BEEI had to expend significant time and energy to finalize the sales and collect the balances due.

27. Mr. Hawes later determined his January 2 commission payment was $3,331.14 short of the earned commission. BEEI has not paid the remaining commission.

### CONCLUSIONS OF LAW

1. This court has personal jurisdiction over all parties in this action.

2. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

3. Plaintiffs stipulated the only claims remaining to be tried were claims for breach of contract and conversion on behalf of BEEI against Mr. Hawes. All remaining claims asserted in the amended complaint were abandoned or are hereby dismissed by the court.

4. BEEI's claims for breach of contract and conversion are controlled by the law of North Carolina. The elements of a claim for breach of contract are: (1) existence of a valid contract; and (2) breach of the terms of the contract. *Poor v. Hill,* 138 N.C.App. 19, 26, 530 S.E.2d 838, 843 (2000). The elements of conversion are: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; and (4) to the exclusion of the rights of the true owner. *Peed v. Burleson's, Inc.,* 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956).

5. On or about June 8, 1998, BEEI and Mr. Hawes entered into the Letter Agreement, which is a valid and enforceable contract.

6. As the Letter Agreement was drafted by BEEI, any ambiguities in the agreement must be resolved against BEEI. *Jones v. Palace Realty Co.,* 226 N.C. 303, 305, 37 S.E.2d 906, 907 (1946).

7. BEEI contends the payment of commissions to Mr. Hawes for rentals and spare parts constitutes a breach of the Letter Agreement and conversion because these transactions were not contemplated in the term "sales." The court finds "sales" as used in the Letter Agreement was defined by the parties' course of performance to include not only the sales of BLTD emulsifying machines, but the sales of spare parts sold over "cost" and income

generated from equipment rentals. BEEI is therefore entitled to recover nothing from Mr. Hawes by reason of breach of contract or conversion as to this allegation.

■ 8. BEEI contends the January 2002 payment of commissions to Mr. Hawes constitutes a breach of the Letter Agreement and conversion because Mr. Hawes was paid commissions before final payments had been made by the customers. The court finds the reasonable interpretation of the phrase "upon receiving payments from customers," as used in the Letter Agreement, is that Mr. Hawes was entitled to receive his 12% commission only upon that part of the sales price actually received by BEEI, and only when those payments were received by BEEI. As a result, Mr. Hawes breached the contract and converted the property of BEEI by causing himself to be paid commissions disproportionate to the actual amounts received by BEEI. BEEI, however, has presented no evidence of any damages resulting from said breach and conversion. Therefore, BEEI is entitled to nominal damages of $1.00.

■ 9. BEEI contends the payment of 12% commissions to Mr. Hawes over and above commissions paid to EPEI constitutes a breach of the Letter Agreement and conversion because any payments to representatives were to be deducted from Mr. Hawes' commissions. The court finds BEEI and Mr. Hawes modified the Letter Agreement, which originally required Mr. Hawes' sales commissions to be reduced by any commission paid to independent sales representatives, to require BEEI to pay Mr. Hawes his 12% commission on sales in addition to commissions payable to other sales representatives. BEEI is therefore entitled to recover nothing from Mr. Hawes by reason of breach of contract or conversion as to this allegation.

10. BEEI contends the payment of commissions to Mr. Hawes for the PPG sale constitutes a breach of the Letter Agreement and conversion because Mr. Hawes was not entitled to a commission on the first two machines sold. The court finds BEEI and Mr. Hawes modified the Letter Agreement, which originally required Mr. Hawes would not receive any commission on the first two machines sold, to permit Mr. Hawes to consider 10 months of rental payments from PPG his "second sale" and to receive a 12% commission on the sale of the machine to PPG. BEEI is therefore entitled to recover nothing from Mr. Hawes by reason of breach of contract or conversion as to this allegation.

11. Mrs. Hawes is entitled to recover on her counterclaim for unpaid wages from January 2002, in the amount of $570.

12. Mr. Hawes is entitled to recover on his counterclaim for unpaid salary from January 2002, in the amount of $2,916.67.

13. Mr. Hawes is entitled to recover on his counterclaim for unpaid expenses from January 2002, in the amount of $1,403.22.

14. Mr. Hawes is entitled to recover on his counterclaim for unpaid commissions earned as of January 2002, in the amount of $3,331.14.

15. Except as provided herein, all claims of Plaintiffs and counterclaims of Defendants will be dismissed with prejudice.

A judgment in accordance with the Findings of Fact and Conclusions of Law will be filed contemporaneously herewith.

### JUDGMENT

For the reasons stated in the Findings of Fact and Conclusions of Law filed contemporaneously herewith,

IT IS THEREFORE ORDERED AND ADJUDGED:

1. Plaintiff B.E.E. International, Inc. have and recover judgment against Defendant Michael Hawes in the amount of $1.00, together with interest from the date of this judgment;

2. Defendant Michael Hawes have and recover judgment against B.E.E. International, Inc. in the amount of $7,651.03, together with interest from the date of this judgment;

3. Defendant Nicole Hawes have and recover judgment against B.E.E. International, Inc. in the amount of $570, together with interest from the date of this judgment;

4. Each party bears its own costs of this action;

5. All claims of Plaintiffs and counter-claims of Defendants are hereby dismissed with prejudice.

6. All remaining pending motions are denied as moot.