Strata Solar, LLC v. Naftel, 2020 NCBC 79.

STATE OF NORTH CAROLINA

DURHAM COUNTY

STRATA SOLAR, LLC,

          Plaintiff,

v.

ALBERT JACKSON NAFTEL, IV;
JOHN BLAIR SCHOOFF; BRIAN
O'HARA; and SONDER ENERGY,
LLC,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 2893

**ORDER AND OPINION ON
DEFENDANTS' JOINT MOTION TO
DISMISS**

1.     **THIS MATTER** is before the Court on the August 10, 2020 filing of Defendants' Joint Motion to Dismiss (the "Motion") brought pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)"). (ECF No. 6.)

2.     For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part the Motion.

> *Ogletree, Deakins, Nash, Smoak & Stewart, P.C. by Phillip J. Strach and Brodie D. Erwin, for Plaintiff Strata Solar, LLC.*
>
> *Bell, Davis & Pitt, P.A. by Marc E. Gustafson, for Defendants Jackson Naftel, Blair Schooff, and Brian O'Hara.*
>
> *Van Hoy, Reutlinger, Adams & Dunn, PLLC by C. Grainger Pierce and Bryan Adams, for Defendant Sonder Energy, LLC.*

Robinson, Judge.

## I.    INTRODUCTION

3.     This dispute arises out of the alleged wrongful taking and misappropriation of Plaintiff Strata Solar, LLC's ("Plaintiff") confidential information and trade secrets

by three of its former employees in an effort to establish a competing business venture.

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6) but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motion.

5. Plaintiff is a North Carolina limited liability company with its principal place of business in Durham, North Carolina. (Compl. ¶ 1.)

6. Plaintiff is in the business of the "development, design, construction, ownership and operation of photovoltaic energy . . . projects" and "the development, design, and construction of utility-scale battery energy storage solutions ('BESS')." (Compl. ¶¶ 8–9.)

7. Defendants Albert Jackson Naftel, IV ("Naftel"), John Blair Schooff ("Schooff"), and Brian O'Hara ("O'Hara" and collectively the "Individual Defendants") are citizens and residents of North Carolina. (Compl. ¶¶ 2–4.) Individual Defendants are former employees of Plaintiff. (Compl. ¶ 6.)

8. Defendant Sonder Energy, LLC ("Sonder Energy" and together with Individual Defendants referred to as "Defendants") is a limited liability company with its principal place of business in Wake County, North Carolina. (Compl. ¶ 5.)

9. Plaintiff hired Naftel in 2014, and at the time of his resignation, Naftel worked as a Director of Development. (Compl. ¶ 10.) Naftel was responsible for executing Plaintiff's strategy and developing the market in North Carolina and

Virginia and submitting recommendations to Plaintiff's investment committee for investment approval. (Compl. ¶¶ 12–13.)

10. Plaintiff hired Schooff in 2011, and at the time of his resignation, Schooff worked as the Chief Business Development Officer. (Compl. ¶ 18.) Schooff was responsible for the development of projects and key relationships with Plaintiff's "critical" clients and customers. (Compl. ¶ 19.)

11. Plaintiff hired O'Hara in 2015, and at the time of his resignation, O'Hara worked as the Senior Vice President of Strategy and Government Affairs. (Compl. ¶¶ 24–25.) O'Hara was responsible for the development of Plaintiff's BESS strategy and the development of certain BESS projects. (Compl. ¶ 25.)

12. By virtue of their employment with Plaintiff, Individual Defendants had access to Plaintiff's trade secrets and confidential information, including development studies, transmission system analyses, substation analyses, project siting, site analyses, land owner information, financial modeling, customer lists, pricing lists, bidding strategies, and customer preferences. (Compl. ¶¶ 14–17, 20–23, 27–30.)

13. Naftel and Schooff signed employment agreements with Plaintiff (the "Employment Agreements") with identical provisions. (Compl. ¶¶ 31–32.) The Employment Agreements contained the following confidentiality provision:

> At all times during Executive's employment and thereafter, Executive will hold all proprietary information in strictest confidence and will not, directly or indirectly, (a) disclose, communicate, or make available any Proprietary Information to any person or entity for any purpose whatsoever, except as expressly authorized by [Plaintiff], or (b) use any Proprietary Information for any purpose other than to the extent necessary for purposes of performing services for [Plaintiff].

(Compl. ¶ 35.)

14.    In the Employment Agreements, Naftel and Schooff recognized that all proprietary information they came in contact with or possessed through their employment with Plaintiff "shall remain the sole and exclusive property of [Plaintiff.]" (Compl. ¶ 34.)  The Employment Agreements provide that, "upon the request of [Plaintiff] at any time, or upon the termination of Executive's employment for any reason, Executive will promptly . . . return or provide to [Plaintiff] all Proprietary Information and shall retain no copies or records of Proprietary Information in any form." (Compl. ¶ 36.)

15.    Plaintiff has several policies that prohibit its employees from forwarding Plaintiff's information to their personal accounts or using personal devices to conduct work for Plaintiff.  (Compl. ¶ 57.)  Plaintiff sends regular reminders of this policy to all of its employees.  (Compl. ¶ 57.)

16.    On April 27, 2020, Individual Defendants resigned from their employment with Plaintiff to form their own solar/storage development company in competition with Plaintiff.  (Compl. ¶ 44.)  Individual Defendants were planning to start their competing entity, Sonder Energy, several months before their resignation from Plaintiff.  (Compl. ¶¶ 45, 76.)

17.    Defendants launched a website for Sonder Energy, which lists Individual Defendants as "Founding Partners." (Compl. ¶ 76.) Sonder Energy's website includes a profile for Individual Defendants, which references their time spent and experience as Plaintiff's employees.  (Compl. ¶ 76.)

18. Plaintiff alleges that Individual Defendants retained thousands of Plaintiff's "documents and files that would be useful to them in a competing enterprise." (Compl. ¶ 45.) On March 5, 2020, while employed by Plaintiff, Schooff forwarded a document that Plaintiff contends contains Plaintiff's trade secrets to his personal e-mail address. (Compl. ¶ 51.) Before Naftel's resignation, Naftel accessed and downloaded documents that Plaintiff contends contain Plaintiff's trade secrets to a flash drive. (Compl. ¶ 53.) As of May 8, 2020, Naftel still possessed the flash drive containing Plaintiff's trade secrets. (Compl. ¶ 60.)

19. As of May 28, 2020, two of the three Individual Defendants, Naftel and Schooff, admitted to retaining Plaintiff's documents and information on their personal computer and/or storage devices. (Compl. ¶¶ 52, 60–62.)

## III. PROCEDURAL BACKGROUND

20. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

21. Plaintiff initiated this action with the filing of the Complaint on July 31, 2020.

22. This action was designated as a mandatory complex business case and assigned to the undersigned on August 3, 2020. (ECF Nos. 1, 2.)

23. On August 8, 2020, Defendants filed the Motion and the Defendants' Memorandum in Support of Their Motion to Dismiss. (Defs.' Memo. Supp. Mot. Dismiss, ECF No. 7 ["Memo."].)

24. The Court held a hearing on the Motion on October 7, 2020, at which all parties were represented by counsel. (ECF No. 26.)

25. The Motion is ripe for resolution.

## IV. LEGAL STANDARD

26. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the Complaint in the light most favorable to Plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court accepts all well-pleaded factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation omitted).

27. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736−37 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C.

161, 166, 558 S.E.2d 490, 494 (2002)). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615, 821 S.E.2d at 737 n.7 (citations omitted).

## V. ANALYSIS

28. Plaintiff asserts three causes of action against Defendants: (1) misappropriation of trade secrets in violation of N.C.G.S. § 66-152 *et seq.*; (2) conversion of Plaintiff's trade secrets and other confidential or proprietary business information; and (3) unfair and deceptive trade practices in violation of N.C.G.S. § 75-1.1. (Compl. ¶¶ 81–98.) The Court addresses each claim in turn.

29. As an initial matter, the Court finds it important to emphasize that the Court's analysis of these claims is limited to the allegations made in the Complaint. Counsel for the parties asked the Court to consider matters raised outside the Complaint; however, the Court declines to do so, which would convert the Motion to one for summary judgment pursuant to Rule 56. *Holton v. Holton*, 258 N.C. App. 408, 414, 813 S.E.2d 649, 654 (2018) ("Rule 12 requires that Rule 56 standards apply to a Rule 12(b)(6) motion for failure to state a claim when the trial court considers matters outside the pleading.").

### A. Trade Secret Misappropriation

30. Plaintiff contends that Defendants have obtained Plaintiff's trade secrets, and because Defendants have formed a competing business, Sonder Energy, it is "inevitable that Defendants have shared or disclosed" Plaintiff's trade secrets in

violation of N.C.G.S. § 66-152 *et seq.* (Compl. ¶¶ 86–88.) "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec*, 370 N.C. at 609, 811 S.E.2d at 547–48 (quoting *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008)).

31. Defendants contend that Plaintiff has failed to adequately allege that Defendants' acquisition of Plaintiff's trade secrets was unauthorized, in other words, that Defendants misappropriated Plaintiff's trade secrets. (*See* Defs.' Reply Supp. Their Joint Mot. Dismiss 2–3, ECF No. 25.) Accordingly, the Court limits its analysis to whether Plaintiff adequately alleged misappropriation.

32. Misappropriation is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C.G.S. § 66-152(1). A complaint must contain allegations, identifying with specificity, "the acts by which the alleged misappropriations were accomplished." *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 586.

33. Analyzing whether a plaintiff properly pled misappropriation to support a trade secret misappropriation claim, this Court in *Wells Fargo Ins. Servs. USA v. Link*, 2018 NCBC LEXIS 42, at *40–42 (N.C. Super. Ct. May 8, 2018), *aff'd per curiam* 827 S.E.2d 458 (N.C. 2019), provided that allegations that the defendant had access

to the plaintiff's trade secrets by way of the defendant's employment with the plaintiff, the defendant became employed by a competitor, some of the plaintiff's customers for whom the defendant was responsible for while employed by the plaintiff transferred their business to the competitor, and the defendant used the plaintiff's trade secrets to solicit the plaintiff's customers required a "significant inferential leap" to conclude that the defendant misappropriated a trade secret; however, the allegations were sufficient at the pleading stage to survive a Rule 12(b)(6) motion. The *Wells Fargo* Court reached the conclusion that the plaintiff's allegations were sufficient notwithstanding the fact that it failed to allege that the defendant (1) ever accessed the plaintiff's trade secrets without authorization; (2) downloaded, copied, or otherwise removed the plaintiff's trade secret information; and (3) disclosed the trade secrets. *Wells Fargo Ins. Servs. USA*, 2018 NCBC LEXIS 42, at *40–41.

34. As to Naftel and Schooff, Plaintiff alleges that (1) Individual Defendants planned a competing business venture several months prior to their resignations; (2) Naftel and Schooff obtained Plaintiff's trade secrets on their personal devices in violation of Plaintiff's policies; and (3) Defendants have disclosed or will disclose Plaintiff's trade secrets in Defendants' competing venture. (Compl. ¶¶ 45, 51–54, 57, 60–61, 77.) The Court concludes that Plaintiff has adequately pled that Naftel and Schooff acquired Plaintiff's trade secrets without authorization, therefore misappropriating Plaintiff's trade secrets. As such, the Motion should be DENIED to the extent that it requests that the Court dismiss the misappropriation of trade secrets claim against Naftel and Schooff.

35. As to O'Hara and Sonder Energy, Plaintiff's allegations of their misappropriation are limited to "[b]ecause Defendants have formed a competing business enterprise together as 'Founding Partners,' it is inevitable that Defendants have shared or disclosed Strata's confidential information and/or trade secrets to each other." (Compl. ¶¶ 77, 87.) The Court is not required to accept Plaintiff's conclusory allegations regarding O'Hara's and Sonder Energy's alleged misappropriation of Plaintiff's trade secrets. *See Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 585–86.

36. Plaintiff does not allege any specific acts by O'Hara or Sonder Energy to show that they accessed, disclosed, or used Plaintiff's trade secrets without Plaintiff's authorization. *See Wells Fargo Ins. Servs. USA*, 2018 NCBC LEXIS 42, at *38–39 (dismissing a trade secret misappropriation claim where the plaintiff failed to allege that defendant accessed or acquired trade secrets when the defendant was not authorized to do so or that the defendant disclosed or used the plaintiff's trade secrets). Accordingly, the Court GRANTS the Motion as to O'Hara and Sonder Energy and dismisses without prejudice[1] the trade secret misappropriation claim asserted against them.[2]

---

[1] Notwithstanding the Court's conclusion that this claim should be dismissed in part, "[t]he decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292 (2013). The Court concludes, in the exercise of its discretion, that dismissal of the trade secret misappropriation claim against O'Hara and Sonder Energy should be without prejudice to Plaintiff's reassertion of such claim through proper factual allegations by way of a motion to amend.

[2] In part, Defendants argue that because "Plaintiff's misappropriation of trade secrets claim relies entirely upon its assertion that Defendants will inevitably disclose [Plaintiff's] purported trade secrets[,]" and the doctrine of inevitable disclosure has not been adopted by North Carolina courts, Plaintiff's trade secret misappropriation claim should fail. (Memo. 3.) It is true that this Court has declined to adopt the doctrine of inevitable disclosure. *See RCR Enters., LLC v. McCall*, 2014 NCBC LEXIS 69, at *17 (N.C. Super. Ct. Dec. 19, 2014); *see*

**B.** **Conversion**

37. Plaintiff alleges that "Defendants' conduct . . . constitutes a conversion of [Plaintiff's] trade secrets and other confidential or proprietary business information." (Compl. ¶ 96.)

38. Conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956). "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). "The essence of conversion is not acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008).

39. Further, "[i]n North Carolina, only goods and personal property are properly the subject of a claim for conversion." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000). "[A]n intangible interest cannot provide the basis for a conversion claim." *Window World of N.*

*also Se. Anesthesiology Consultants, PLLC v. Charlotte-Mecklenburg Hosp. Auth.*, 2018 NCBC LEXIS 137, at *56–59 (N.C. Super. Ct. June 22, 2018); *DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50, at *fn. 4 (N.C. Super. Ct. May 12, 2015). However, the Court's dismissal of the trade secret misappropriation claim against O'Hara and Sonder Energy is for the limited reason that Plaintiff fails to allege the unauthorized access, disclosure, or use of Plaintiff's trade secrets by O'Hara and Sonder Energy.

*Atlanta, Inc. v. Window World, Inc.*, 2018 NCBC LEXIS 111, at *8–9 (N.C. Super. Ct. Oct. 22, 2018).

40. Plaintiff does not allege, or argue, that Defendants deprived Plaintiff of a tangible form of its trade secrets, either in a printed "hard copy" or Plaintiff's only copy of the information in its electronic form. Plaintiff argues that it "has been deprived of possession of its trade secrets by the Individual Defendants[,]" and "Defendants have likely destroyed its trade secrets by taking them without authorization, thus depriving [Plaintiff] of the ownership of its trade secret[s]." (Pl.'s Resp. Defs.' Mot. Dismiss, 5, 7 (emphasis in original), ECF No. 20 ["Resp."].)

41. Plaintiff's argument fails for two reasons. First, Plaintiff attempts to assert a conversion claim based on intangible information. *See Global Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 159, at *33–34 (N.C. Super. Ct. Nov. 29, 2018). Second, Plaintiff fails to allege deprivation of the use of its trade secret information. *See id.*

42. Furthermore, this issue was addressed in *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51, at *17–18 (N.C. Super. Ct. June 9, 2017), when the plaintiff contended that deprivation "of the sole and exclusive dominion and control over its trade secrets and confidential information" supported a conversion claim. The plaintiff in part relied on a federal court decision, which provided that the copying of an electronic document containing proprietary information constitutes conversion when it deprives its owner "of the sole and exclusive dominion and control over the proprietary information[,]" *Bridgetree, Inc. v. Red F Mktg., LLC*, 2013 U.S. Dist.

LEXIS 15372, at *49–51 (W.D.N.C. Feb. 5, 2013), and this Court rejected this approach, *Addison Whitney, LLC*, 2017 NCBC LEXIS 51, at *17–18.

43. The Court in *Addison Whitney, LLC* dismissed the conversion claim and reiterated North Carolina courts' approach that deprivation to the owner is "the essence of a conversion claim[.]" *Addison Whitney, LLC*, 2017 NCBC LEXIS 51, at *18. This Court emphasizes today that "[i]n the absence of further guidance from the North Carolina Supreme Court or Court of Appeals, the Court declines to construe the law of conversion more broadly." *Id.*

44. Accordingly, the Court determines that the Motion should be GRANTED and Plaintiff's conversion claim should be dismissed without prejudice.

### C. Chapter 75

45. To state a claim for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 ("UDTPA"), Plaintiff must allege "(1) [D]efendant[s] committed an unfair and deceptive act or practice, (2) in or affecting commerce, and (3) [P]laintiff was injured as a result." *McKee v. James*, 2013 NCBC LEXIS 33, at *31 (N.C. Super. Ct. July 24, 2013).

46. Plaintiff's basis for its UDTPA claim is "Defendants misappropriated and unlawfully utilized [Plaintiff's] trade secret and confidential information." (Compl. ¶ 92.) Plaintiff's argument is limited to a single paragraph in its responsive brief providing that Plaintiff "pled a valid [UDTPA] claim by virtue of adequately alleging facts sufficient to support its trade secret claim." (Resp. 4.)

47. Therefore, because the Court at this stage of the proceeding declines to dismiss the trade secret misappropriation claims brought against Naftel and Schooff, the Court DENIES the Motion to the extent it requests that the Court dismiss the UDTPA claim against Naftel and Schooff. *See SCR-Tech, LLC v. Evonik Energy Servs., LLC*, 2011 NCBC LEXIS 27, at \*87 (N.C. Super. Ct. July 22, 2011) (declining to dismiss a UDTPA claim that was dependent on a claim for trade secret misappropriation that survived a Rule 56 motion); *see also Med. Staffing Network, Inc. v. Ridgeway*, 194 N.C. App. 649, 659, 670 S.E.2d 321, 329 (2009) ("A violation of the Trade Secrets Protection Act constitutes an unfair act or practice under [N.C.G.S.] § 75-1.1.").

48. However, because the Court dismisses both the trade secret misappropriation claim and conversion claim against O'Hara and Sonder Energy, the Court GRANTS the Motion and dismisses the UDTPA claim brought against O'Hara and Sonder Energy without prejudice. *See Krawiec*, 370 N.C. at 612–13, 811 S.E.2d at 550 ("Because we determined that plaintiffs failed to state a valid claim for tortious interference with contract or misappropriation of trade secrets, we necessarily must conclude that plaintiffs also failed to adequately allege [a UDTPA claim.]").

## VI.    CONCLUSION

49. For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motion as follows:

A.   The Court **DENIES** the Motion to the extent it requests the Court dismiss Plaintiff's trade secret misappropriation claim against Naftel and Schooff;

B.   The Court **GRANTS** the Motion to the extent it requests the Court dismiss Plaintiff's trade secret misappropriation claim against O'Hara and Sonder Energy and **DISMISSES** the trade secret misappropriation claim asserted against O'Hara and Sonder Energy without prejudice;

C.   The Court **GRANTS** the Motion to dismiss the conversion claim and **DISMISSES** the conversion claim without prejudice;

D.   The Court **DENIES** the Motion to the extent it requests the Court dismiss Plaintiff's UDTPA claim against Naftel and Schooff; and

E.   The Court **GRANTS** the Motion to the extent it requests the Court dismiss Plaintiff's UDTPA claim against O'Hara and Sonder Energy and **DISMISSES** the UDTPA claim asserted against O'Hara and Sonder Energy without prejudice.

**SO ORDERED**, this the 29th day of October, 2020.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases